**Jamie Lynn NELSON and William Nelson, Plaintiffs,**

v.

**FLEET NATIONAL BANK, a National Corporation Under the Corporate Laws of the United States, Plaza Home Mortgage Bank, a Federal Savings Bank, Stanley M. Bergum, and Edward J. Naworol, Defendants.**

**Donna HUMPHRIES, Plaintiff,**

v.

**FLEET MORTGAGE CORPORATION and Edward J. Naworol, Defendants.**

Civil Action Nos. 96–43 MMS, 96–71 MMS.

United States District Court, D. Delaware.

Argued Nov. 5, 1996.

Decided Dec. 5, 1996.

---

David A. Boswell, Schmittinger & Rodriguez, P.A., Wilmington, DE, for plaintiff Jamie Lynn Nelson.

Joseph Grey, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, DE, for plaintiff Donna Humphries.

John D. Balaguer, White and Williams, Wilmington, DE (Debbie Rodman Sandler, Robin H. Rome, White and Williams, Philadelphia, PA, of counsel), for defendants Fleet National Bank, Plaza Home Mortgage Bank and Stanley M. Bergum.

Barry M. Willoughby, and Teresa C. Fariss, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for defendant Naworol.

### OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

### INTRODUCTION

These two related but not consolidated actions stem from the employment of plaintiffs Nelson and Humphries by Plaza Home Mortgage Bank in the Newark, Delaware branch.[1] Plaintiff Nelson asserts claims of employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, against Plaza, as well as two of its employees, Edward Naworol and Stanley Bergum.[2] Nelson additionally asserts state law claims for breach of contract and tort, while her husband asserts a loss of consortium claim. Plaintiff Humphries has sued Fleet National Bank under Title VII and 42 U.S.C. § 1981 alleging employment discrimi-

---

1. Plaza has since merged with Fleet National Bank, with Fleet as the surviving entity. Both plaintiffs have named Fleet as a defendant. For simplicity, the defendant employer will be referred to as "Plaza."

2. Naworol is no longer employed by Plaza/Fleet; it is unclear whether Bergum is still employed there.

nation. She also asserts state law contract and tort claims, including a claim for tortious interference with another's performance of his own contract against Naworol.[3]

Currently before the Court is defendant Naworol's motion to dismiss for failure to state a claim, brought under Federal Rule of Civil Procedure 12(b)(6), and directed at all claims brought against him individually. For the reasons stated below, the Court will grant defendant's motion with respect to all claims except both plaintiffs' claims for tortious interference with contract.

## FACTS

These cases are related, as noted above, because they stem from both plaintiffs' employment at Plaza at roughly the same time. Plaintiff Jamie Lynn Nelson, a white female, was employed by Plaza as Operations Manager of the Newark Branch from May 16, 1994, to July 20, 1994. Nelson Docket Item ("N.D.I.") 1, at 3. She alleges defendant Naworol, Production Manager at the Newark Branch, sexually harassed her and subjected her to race discrimination by asking her to participate in a scheme to fire an African–American employee of Plaza. Further, she claims Plaza, upon learning of the alleged harassment, failed to take sufficient corrective action.

Specifically, Naworol is alleged to have asked female employees of the bank to wear tee-shirts bearing the slogan "Need a Quickie" to an industry picnic. N.D.I. 1, at 5–6. Naworol further "harassed and belittled" the female employees; on one occasion he admitted he treated female employees differently than male employees because men were the family breadwinners and did not need added pressure from him. *Id.* When Nelson complained about this treatment, Naworol retaliated against her by soliciting negative statements about her work performance, going

through her personal files and belongings in her office and publicizing her private information to her co-workers. *Id.* at 8, 15.

Nelson also states Naworol and his supervisor, Bergum, who was Regional Vice President of Production, subjected her to race discrimination. They allegedly asked her to spy on plaintiff Humphries and document Humphries' interaction with another Plaza employee, Gil Daire, in an effort to build a record for terminating Daire. *Id.* at 12. Daire is an African–American man. *Id.* at 11. Nelson claims Plaza did not adequately respond to her numerous complaints about the harassment and she finally was forced to resign on July 21, 1994. *Id.* at 9, 13.

Plaintiff Donna Humphries, also white, began work at Plaza as marketing assistant/loan officer on April 22, 1994. Humphries Docket Item ("H.D.I.") 26, at 2. Although unclear, it appears Humphries is no longer employed by Plaza/Fleet. She alleges Naworol, her supervisor, harassed her and expressed displeasure at her friendship with Daire. *Id.* at 2–3. Naworol is alleged to have accused Humphries, who is married, of having an extra-marital affair with Daire. *Id.* at 3. Naworol sent Humphries a memorandum maintaining the relationship was "unacceptable and unprofessional" and indicated her continued employment was contingent upon her no longer seeing Daire. *Id.* Naworol is alleged to have used racial slurs when speaking about Daire. *Id.* Humphries complained about Naworol's treatment to other managers at Plaza to no avail. *Id.* at 4–6.

In June 1994, Nelson allegedly informed Humphries that Naworol had placed Humphries on a counseling checklist, part of Plaza's disciplinary process. *Id.* at 5. In June or July of 1994, Naworol accused Humphries of making unauthorized personal phone calls at work for which she was reprimanded by

---

**3.** Although Humphries styles this count of her complaint Intentional Interference with Contractual Relations, the allegations she has set forth actually comprise the elements of a claim of intentional interference with another's performance of his own contract, *see* Restatement (Second) of Torts § 766A, rather than tortious interference with contract. Most conspicuously, she has not alleged a breach of contract, which is a necessary element of the latter tort. The Court accordingly analyzes her claim as the tort of intentional interference with another's performance of his own contract. Because the two torts are related, for simplicity, this opinion will refer to both plaintiffs' claims collectively as tortious interference with contract unless it is necessary to distinguish between the two.

Bergum. *Id.* In July 1994, Naworol presented Humphries with a less favorable employment contract than her previous one, and threatened to fire her if she did not sign it. *Id.* at 6. Humphries signed the agreement. *Id.* She was not aware of any other employee who was forced to sign a new contract at this time. *Id.*

In August 1994, both Naworol and Bergum left Plaza's Newark branch. *Id.* A new regional manager, Joseph Stangenelli, told Humphries that until she proved she was not going to sue Plaza because of her treatment by Naworol, she would not receive support from management. *Id.* Following Stangenelli's arrival, Plaza allegedly retaliated against Humphries by reducing her salary and unfavorably changing the terms of her employment contract. *Id.* at 7. On February 17, 1995, Humphries filed a claim of discrimination with the EEOC. *Id.* at 8.

## DEFENDANT NAWOROL'S MOTION TO DISMISS

Defendant Naworol filed a motion to dismiss for failure to state a claim with regard to all the claims against him individually. With respect to Jamie Lynn Nelson, such claims are: gender and race discrimination, and constructive discharge under Title VII, breach of contract, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress and tortious interference with contractual relations. Nelson's husband, William, asserted a claim for loss of consortium, at which Naworol's motion also is directed. Finally, Humphries sued Naworol individually for intentional interference with another's performance of his own contract. In her reply brief to defendant's motion to dismiss, she seems to be seeking to assert a non-pled libel claim. This opinion will address each claim separately below.

### I. Standard for a Motion to Dismiss under Rule 12(b)(6)

In deciding this motion, the Court must accept all of the allegations in the plaintiffs' complaints as true, and additionally, draw all reasonable inferences from the facts alleged in the complaint. *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994); *Finch v. Hercules Inc.,* 809 F.Supp. 309, 310 (D.Del. 1992). "Unless the plaintiff can prove no set of facts in support of the claim that would entitle [the plaintiff] to relief, the complaint should not be dismissed." *ALA, Inc.,* 29 F.3d at 859.

### II. Title VII Claims

Plaintiff Nelson's complaint seeks to hold Naworol jointly and severally liable for violations of Title VII including race and gender discrimination, hostile work environment and retaliation. Defendant Naworol asserts these claims may not be asserted against him because individual employees, as opposed to corporate employers, may not be held liable under Title VII. Plaintiff maintains the law of the Third Circuit is unsettled on this issue, and the Court therefore could hold otherwise.

Plaintiff's argument concerning liability of individual employees is based on the language of Title VII, 42 U.S.C. § 2000e *et seq.* Title VII prohibits employers from engaging in certain employment practices, *see id.* § 2000e–2(a). Employer is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person...." *Id.* § 2000e(b). Plaintiffs thus claim Naworol, as an agent of Plaza, may be held personally liable.

Plaintiff's argument that the law is unsettled on the issue may have had some merit when it was first asserted; however, the issue has now been decided against plaintiff. The Third Circuit in *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061 (3d Cir.1996) (en banc), recently joined "the clear majority of the courts of appeals that have considered this question" in holding "Congress did not intend to hold individual employees liable under Title VII." *Id.* at 1077–78. It follows that Naworol may not, under any set of facts, be held individually liable for Title VII violations. Accordingly, the Title VII claims against Naworol will be dis-

missed.[4]

## III. State Law Claims

### A. Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing

In Count IV of Plaintiff Nelson's complaint, she alleges "[b]y actively ratifying the race and gender discrimination at the Newark branch and by constructively discharging Plaintiff in violation of state and federal laws and its own purported policies as alleged herein, Plaza, by and through Mr. Naworol and Mr. Bergum, without limitation, intentionally breached its employment contract with Plaintiff, and further breached the covenant of good faith and fair dealing incorporated therein."

Naworol asserts several arguments in support of his motion to dismiss Nelson's contract claims against him. The Court is persuaded by Naworol's argument that he may not be sued under Nelson's employment contract because he was not a party to that contract. Nelson contracted with Plaza, not Naworol; she therefore is confined to asserting her contract claims against Plaza.

None of the cases cited by plaintiff hold otherwise. *See E.I. DuPont de Nemours and Co. v. Pressman,* 679 A.2d 436 (Del.1996) (en banc); *Merrill v. Crothall–American, Inc.,* 606 A.2d 96 (Del.1992); *Shearin v. E.F. Hutton Group, Inc.,* 652 A.2d 578 (Del.Ch. 1994); *Finch v. Hercules Inc.,* 809 F.Supp. 309 (D.Del.1992). In all these cases, claims for breach of contract were asserted against the corporate employer, and not the plaintiff's supervisor. The Court will grant Naworol's motion to dismiss with respect to Nelson's breach of contract and breach of the implied covenant of good faith and fair dealing claims.

### B. Intentional Infliction of Severe Emotional Distress

Nelson in Count V of her complaint alleges intentional infliction of severe emotional distress. Specifically, she alleges the defendant's conduct was outrageous and unprivileged, defendant intended to cause her severe emotional distress, she suffered severe emotional distress, and defendant's conduct was a cause of her severe emotional distress. Such allegations are tailored to the elements of the tort, which are that plaintiff suffered severe emotional distress as a result of some extreme and outrageous conduct by the defendant. *See Cummings v. Pinder,* 574 A.2d 843, 845 (Del.1990); *Brett v. Berkowitz,* No. 91C–12–251, 1995 WL 270146, at *6 (Del.Super. Apr. 13, 1995); Restatement (Second) of Torts § 46(1) (1977).

In his motion to dismiss this claim, Naworol asserts the claim is barred by the exclusivity provision of Delaware's Workers' Compensation statute, Del.Code Ann. tit. 19 § 2304. Under the Workers' Compensation scheme, employees may not sue their employers or co-workers in tort for injuries compensable under the Act. *See id.* Under Delaware state law, a claim such as Nelson's—alleging intentional infliction of emotional distress resulting from sexual harassment by a co-worker, where there is no relationship outside the workplace between the alleged harasser and the victim—is compensable under the Act. *Konstantopoulos v. Westvaco Corp.,* No. 94–7462, —— A.2d —— (Del. Oct. 2, 1996). Accordingly, Nelson may not maintain a tort suit against Naworol and her claim must be dismissed.

### C. Tortious Interference with Contract

In Count VI of her complaint, Nelson alleges tortious interference with contract. Specifically, she states: "Mr. Naworol ... did intentionally and tortiously interfere with Plaintiff's employment contract with Plaza, without justification or privilege, intending to deprive her of all the benefits accruing to her thereunder." N.D.I. 1, at 20. Similarly, Humphries asserts, "[d]efendant Naworol intentionally and tortiously interfered with Plaintiff's employment at Plaza so as to cause

---

4. The remainder of plaintiffs' claims rest on state law. However, the Court will not exercise its discretion to dismiss these claims under 28 U.S.C. 1367(c), because the Title VII claims remain against Plaza, and therefore the case will proceed in this Court with respect to the same set of facts as gave rise to the state law claims against Naworol. Dismissal of the state claims against Naworol would not promote judicial economy at this time.

Plaintiff's performance of her contractual obligations to become more expensive and burdensome." H.D.I. 26, at 11. In Humphries' complaint, this is the only count directed at Naworol individually.

■ The elements of tortious interference with contract are as follows: "There must be (1) a contract, (2) about which defendant knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury." *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del.Ch.1987). *See also* Restatement (Second) of Torts § 766.

The elements of the tort, intentional interference with another's performance of his own contract, that Humphries asserts, are "[o]ne who intentionally and improperly interferes with the performance of a contract ... between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him." Restatement (Second) of Torts § 766A. The difference between the two is the first relates to Naworol's interference with Fleet's performance of its contract with Nelson, by allegedly causing Fleet to constructively discharge her, while the second relates to Naworol's interference with Humphries' performance of her own contract, allegedly by causing her to work for less compensation. *See id.*, comment a. Both require that the defendant's conduct be improper, or, in other words, not justified. *Id.* Both plaintiffs having alleged facts to support all the required elements of their respective tort claims, the Court will deny defendant's motion to dismiss these claims.

■ With respect to Nelson's claim of tortious interference with contract, she has stated she was employed by Plaza, which suffices to allege a contract of employment existed. Further, it is fair to infer Naworol, as her coworker, knew of that contract. It also can be inferred from the complaint that Naworol's discriminatory acts caused Nelson's constructive discharge. For example, Nelson alleges Naworol's discrimination and retaliation was so intolerable as to force her to resign. Finally, Nelson alleges she was injured in that she was constructively discharged, and thus does not enjoy the salary and benefits of her former employment.

■ Humphries similarly has alleged a contract of employment with Plaza. She further has alleged she was forced by Naworol to accept a contract that in essence reduced her pay without reducing her responsibilities. These facts support a claim that Naworol caused the performance of her contract to be more expensive, as required by the tort of intentional interference with another's performance of his own contract. *See* Restatement (Second) of Torts § 766A, comment g ("It is ... sufficient [to allege] that the performance of the contract to which the plaintiff is obligated is made more expensive to [that plaintiff], so that [the plaintiff] ... is subjected to a financial loss.").

■ Finally, as noted above, both torts require a showing that the action taken was without justification, which involves consideration of whether the interference with the contract was improper. *Irwin & Leighton*, 532 A.2d at 992–93. Such considerations are governed by the Restatement (Second) of Torts § 767 and they include: (1) the nature of the actor's conduct, (2) the actor's motive, (3) the interest of the other with which the actor's conduct interferes, (4) the interests sought to be advanced by the actor, (5) the societal interests in protecting the freedom of action of the actor and the contractual interests of the other, (6) the proximity or remoteness of the actor's conduct to the interference and (7) the relations between the parties. The Delaware courts have followed this Restatement test. *See Hursey Porter & Assocs. v. Bounds*, No. 93C–01–091, 1994 WL 762670, at *13–16 (Del.Super. Dec. 2, 1994). These factors can be summarized by simply asking "whether pursuit of self-interest justified one in inducing another to breach a contract in the particular circumstances...." *Irwin & Leighton*, 532 A.2d at 992. It is a fair inference from the complaint that Naworol had no legitimate self-interest in causing Plaza's alleged breach of contract with Nelson. Similarly, a fair construction of Humphries' complaint could support a claim

that Naworol acted for reasons other than business concerns. Both plaintiffs' complaints support the inference that Naworol was motivated by racial and gender hatred.

Naworol's responses to the two plaintiffs' claims are virtually identical and will be treated together, although the Court has determined Humphries' complaint actually states a claim for violation of the tort, intentional interference with another's performance of his own contract. It is assumed Naworol's defenses are equally applicable to both Nelson's claim of tortious interference with contract as well as Humphries' intentional interference with another's performance of his own contract. Naworol asserts two arguments in response to plaintiffs' claims: First, he states, as a matter of law, no action may be maintained for tortious interference with contract in connection with an at-will employment contract. Second, he argues a supervisor may not be held liable for intentional interference with a subordinate's employment contract. The Court is not persuaded by Naworol's first argument, and it finds plaintiffs' claims survive his second argument under an exception for claims against corporate agents who exceed the scope of their employment.

**i. Tortious Interference with an At-Will Employment Contract**

Naworol cites two unpublished decisions in support of his assertions that plaintiffs may not sue for tortious interference with contract because of their at-will employment status: *Rizzo v. E.I. duPont de Nemours & Co.*, No. 86C–JL–88, 1989 WL 135651 (Del.Super. Oct. 31, 1989), and *Park v. Georgia Gulf Corp.*, No. 91–569, 1992 WL 714968 (D.Del. Sept. 14, 1992). While these cases do stand for Naworol's proposition, neither is dispositive of the plaintiffs' claims.

In applying state law, this Court is bound to follow the decisions of the Delaware Supreme Court. When the Delaware Supreme Court has not opined on a particular issue, as is the case here, this Court must predict its path, considering "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data...." *Scotts African Union Methodist Protestant*

*Church v. Conference of African Union First Colored Methodist Protestant Church*, 98 F.3d 78, 92 (3d Cir.1996), *petition for cert. filed*, Nov. 5, 1996. In making that prediction, the Court may be guided by decisions of lower state courts, but such decisions are not dispositive. *Continental Ins. Co. v. Pipher*, 934 F.Supp. 639, 642 (D.Del.1996). Similarly, there is no "law of the district [requiring the Court to follow other courts in this district].... The doctrine of stare decisis does not compel one district court judge to follow the decision of another." *Threadgill v. Armstrong World Industries*, 928 F.2d 1366, 1371 (3d Cir.1991).

After considering all relevant authority, the Court predicts the Supreme Court of Delaware would hold an action for tortious interference with contract may be maintained in conjunction with an at-will employment contract. That holding would be consistent with the positions of several recognized authorities on the subject of torts. For example, the Restatement (Second) of Torts indicates a cause of action for tortious interference with contract may for lie breach of an at-will contract. "Until ... terminated ... the [at-will] contract is valid and subsisting, and the defendant may not properly interfere with it." § 766, cmt. g. Similarly, Prosser and Keeton on The Law of Torts opines with relation to tortious interference:

> Virtually any type of contract is sufficient as the foundation of an action for procuring its breach.... There is some authority to the contrary effect as to contracts which the promissor may terminate at will, on the theory that there is really nothing involved but an option on his part to perform or not. However, eminent legal writers to the contrary notwithstanding, the overwhelming majority of the cases have held that interference with employment or other contracts terminable at will is actionable, since until it is terminated the contract is a subsisting relation, of value to the plaintiff, and presumably to continue in effect.

W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 129, at 994–96 (5th ed. 1984). Finding no authority from neighbor-

ing state supreme courts, the Court finds it appropriate to rely on these scholarly opinions.

In doing so, the Court is not brushing aside the Delaware Superior Court's relevant opinion in *Rizzo*. In that case, plaintiff, a former at-will employee of E.I. DuPont de Nemours & Co., filed suit against that company and several of its supervisory employees alleging tort claims including tortious interference with contract. Specifically, he alleged defendants disregarded their stated policies with respect to his job conditions; because of that and because of animosity to him from his supervisors, he felt compelled to take early retirement. Slip op. at 4.

Delaware's historical adherence to the at-will employment doctrine led the Superior Court to conclude "a cause of action is not generally available to show that termination was improper." *Id.* at 2. The court further pointed to several cases in which the Delaware Supreme Court rejected arguments factually similar to the plaintiff's, in the sense it was argued the at-will doctrine was abrogated by the presence of certain employer policies. The Superior Court felt compelled to follow those decisions and grant summary judgment for defendants. *Id.* at 5. It stated: "Looking at the facts in a light most favorable to the plaintiffs and assuming these facts are true, this Court must still follow Delaware law. The Supreme Court of Delaware has concluded that claims based on company policies do not give rise to a cause of action for an employee at-will, who is terminated." *Id.* at 4.

Although not entirely clear from the opinion, it appears the *Rizzo* court was reacting in part to the fact that plaintiff named the corporate employer as defendant in his tort suit. In that sense, plaintiff truly was attempting to evade the at-will doctrine. Thus, the court's response that plaintiff's claim already had been rejected by the Delaware Supreme Court does not lead this Court to believe, under Delaware law, no cause of action may lie for tortious interference with an at-will contract. The present case involves different factual claims—plaintiffs here allege Naworol interfered with their employment contracts by, in Nelson's case,

causing her constructive discharge, and in Humphries' case, forcing her to work for less compensation. By asserting these claims, plaintiffs do not attempt to evade the at-will doctrine, but merely seek to hold Naworol responsible for infecting a healthy employment relationship. In short, one can reasonably predict the Delaware Supreme Court would not distinguish between an at-will employment contract and an employment contract for a term of years where the defendant is a supervisor who tortiously interferes with the employee's contract. The gravamen of the tort is interference with the employment contract irrespective of the term of that contract. In reaching this conclusion, the Court respectfully disagrees with *Park v. Georgia Gulf Corp.*, No. 91–569, Slip op. at 18, 1992 WL 714968 (D.Del. Sept. 14, 1992) ("Where the contract ostensibly interfered with is an at-will employment contract . . . the cause of action for tortious interference with contract does not lie.").

Recent Third Circuit appellate authority adds to the Court's belief that as a matter of logic, at-will status should not bar suits for tortious interference with contract. *See Varrallo v. Hammond Inc.*, 94 F.3d 842 (3d Cir.1996). In *Varrallo*, the court held under New Jersey law summary judgment was not appropriate against a plaintiff who sued his supervisor individually for tortious interference with prospective economic advantage. *Id.* at 849. It found the plaintiff's at-will status "irrelevant" because regardless of it, the plaintiff possessed a reasonable expectation of economic advantage with respect to his job. *Id.* at 848. Similarly, the Court believes Nelson's and Humphries' at-will status does not negate the possibility that someone could tortiously interfere with their employment contracts. It follows Nelson and Humphries had a "reasonable (if unenforceable) expectation of continued employment at the company" absent tortious interference with that employment by Naworol. *Id.* at 848. Therefore the Court will not dismiss the claims based on Naworol's first argument.

### ii. Scope of Naworol's Employment

■ Naworol's second argument is "[e]mployees of a corporation that is a party to a

contract cannot be held personally liable for inducing a breach of contract by their employer so long as they are acting in their roles as corporate agents when engaging in the alleged tortious interference." D.I. 15, at 18–19 (citing *Shearin v. E.F. Hutton Group, Inc.* 652 A.2d 578, 590 (Del.Ch.1994)). Plaintiffs do not dispute this statement of the law, but instead argue a fair construction of their complaint supports the allegation that Naworol was acting beyond the scope of his employment, and thus was not acting as a corporate agent.

■ As Naworol points out, scope of employment is defined by the Restatement (Second) of Agency § 228. In *Coates v. Murphy,* 270 A.2d 527, 528 (Del.1970), the Delaware Supreme Court adopted the Restatement for purposes of considering the vicarious liability of employers for their employees' torts. Although no Delaware court has so held, it is believed the Delaware Supreme Court also would rely on section 228 in deciding whether an employee acted outside the scope of his employment for purposes of tortious interference with contract.

Section 228 states in relevant part:

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master. . . .

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

■ Whether an employee has acted beyond the scope of employment is generally a question for the jury, although the Court may decide it as a matter of law if it is very clear. See *Donson v. Baez,* No. 89–365–CMW, 1991 WL 26995, at *3 (D.Del. February 21, 1991). Applying the Restatement (Second) of Agency test, *Donson* held as a matter of law two employees of the Alfred I. DuPont Institute, a hospital, were not acting within the scope of employment for vicarious liability purposes when they sexually assaulted a patient. *Id.* The court found the individual defendants' actions were personally motivated as opposed to motivated even in part to serve their employer. *Id.*

In *Konstantopoulos v. Westvaco Corp.,* No. 90–146–CMW, 1992 WL 162957 (D.Del. June 19, 1992), that same court, also in the context of a vicarious liability claim, considered whether several employees acted outside the scope of employment when they allegedly sexually assaulted and harassed their coworker. The court denied summary judgment for the defendant company with regard to the vicarious liability claim; it found a wholesale application of *Donson* would erroneously insulate all employers from liability for sexual misconduct of their employees, regardless of whether they knew of the employee's alleged misconduct. *Id.,* at *13. Instead, the court found it appropriate to "consider whether the actions complained of were done during the course of and in furtherance of their employment, not whether the specific act complained of could be said to be furthering the employer's objectives." *Id.*

[A]lthough the specific acts of assault and battery cannot be said to further the employer's objectives, they were done while the perpetrators were within the scope of employment. Although the defendant [company] did not authorize these acts specifically, the perpetrators were authorized to carry out the business of the defendant. Thus if the defendant's employees resorted to the alleged acts in carrying out this business the employer may be found liable.

*Id.* at *14. The court concluded a genuine issue of material fact existed as to whether, under that test, the defendant employees acted outside the scope of their employment; thus summary judgment was precluded.

While this Court recognizes the underlying policy for holding employers vicariously liable for acts of their employees has no application to the case at hand, it does not believe the absence of such policy considerations in the present case changes the definition of the scope of employment. Both Nelson and Humphries have alleged Naworol harassed and mistreated them because of their sex. Under *Donson* and *Konstantopoulos,* such

allegations could, but do not necessarily, support a finding that Naworol acted outside the scope of his employment. Therefore, the Court finds Nelson has stated a claim for tortious interference with contract and Humphries has stated a claim of intentional interference with another's performance of his own contract. Naworol's motion to dismiss with respect to these claims will be denied.

### D. Loss of Consortium

 Plaintiff Nelson's complaint also alleges because of the injuries to his wife, William Nelson suffered loss of consortium. The elements of that tort are:

> (1) that the party asserting [the claim] was married to the person who suffered *physical injury* at the time the injury occurred, (2) that the spouse suffered injury which deprived the other spouse of some benefit which formerly existed in the marriage, and (3) that the injured spouse has a valid cause of action for recovery against the tortfeasor.

*Lacy v. G.D. Searle & Co.*, 484 A.2d 527, 532 (Del.Super.1984).

The parties agree a claim for loss of consortium is "derivative;" in other words, it is derived from and requires a valid claim of injury by the other spouse. Likewise, although Nelson has not conceded this fact, it is clear from the case law a loss of consortium claim requires a physical, as opposed to pecuniary, injury to the plaintiff's spouse.[5] As the Court will dismiss all of Jamie Lynn Nelson's claims against Naworol except for tortious interference with contract, which alleges only pecuniary injury, William Nelson's claim must also be dismissed. *See Lynch v. Mellon Bank of Delaware*, No. 90C–JA–125, 1992 WL 51880, at \*5, 1992 Del.Super. LEXIS 551, at \*15–16 (Del.Super. March 12, 1992); *cf. Dugan v. Bell Tel.*, 876 F.Supp. 713, 728 (W.D.Pa.1994) (holding under Pennsylvania law no recovery is permitted on a loss of consortium claim "based solely on *pecuniary* injuries to the plaintiff's spouse").

### E. Plaintiff Humphries' Recently–Asserted Libel Claim

 In her brief opposing defendant's motion to dismiss, Humphries asserted for the first time her complaint also states a cause of action for libel. If through some alchemy unknown to the Court her complaint could be construed to set forth a libel claim, it would be dismissed because of her failure to apprise defendant that it was the target of a libel count.

### CONCLUSION

In summary, the Court will grant Naworol's motion to dismiss with respect to Jamie Lynn Nelson's Title VII claims, her contract claims, her claims of intentional infliction of severe emotional distress and William Nelson's claims for loss of consortium. The Court will deny defendant's motion with respect to Nelson's claim for tortious interference with contract and Humphries' claim for intentional interference with another's performance of his own contract.

An order will issue consistent with this opinion.

---

5. The parties disagree as to whether Nelson's asserted intentional infliction of emotional distress claim provides the type of physical injury contemplated by the loss of consortium tort. Because the Court has dismissed that claim, it does not reach the issue.