# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| WILLIAM WEST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. N17C-11-137 MMJ CCLD |
| ACCESS CONTROL RELATED | ) |
| ENTERPRISES, LLC; LLR EQUITY | ) |
| PARTNERS, IV, L.P.; LLR EQUITY | ) |
| PARTNERS PARALLEL IV, L.P.; | ) |
| SETH LEHR, an individual; | ) |
| DAVID STIENES, an individual; | ) |
| GREG CASE, an individual; | ) |
| ROBERT CHEFITZ, an individual; and | ) |
| JOSEPH GRILLO, an individual. | ) |
| | ) |
| Defendants. | ) |

Submitted: April 24, 2019
Decided: June 5, 2019

Upon Defendants' Partial Motion to Dismiss
**GRANTED IN PART AND DENIED IN PART**

Upon Plaintiff's Motion for Leave to Amend
**DENIED**

## <u>OPINION</u>

Justin K. Victor, Esq., Michael L. Banks, Esq. (Argued), Vishal H. Shah, Esq., Morgan, Lewis, & Bockius, LLP, *Attorneys for Defendants.*

1

Geoffrey G. Grivner, Esq., Buchanan, Ingersoll, & Rooney, PC; Ekwan E. Rhow, Esq., Sharon Mayer, Esq. (Argued), Patricia H. Jun, Esq., Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg, & Rhow, P.C., *Attorneys for William West.*

**JOHNSTON, J.**

## PROCEDURAL AND FACTUAL CONTEXT

This action involves the termination of an employment relationship between Plaintiff William West and Defendant Access Control Related Enterprises ("ACRE"). West co-founded ACRE in 2012 along with Joseph Grillo. ACRE provides security technologies to limit physical access to campuses, buildings, rooms, and other environments. West served as ACRE's Chief Financial Officer and its Chief Operating Officer. ACRE quickly grew into a leading private security company through acquisitions of other companies.

In 2013 Defendant LLR Equity Partners ("LLR") made a substantial investment in ACRE. This investment gave LLR a majority ownership interest and control of ACRE's Board of Directors. LLR Partners Seth Lehr, David Stienes, and Greg Case joined West and Grillo on ACRE's board. LLR became ACRE's largest shareholder as a result of this transaction. West received a payment in the form of equity in exchange for the interest in the company that he sold to LLR.

West executed a number of agreements for his employment and related compensation. Those agreements included: an LLC Agreement; a Severance

2

Agreement; an Equity Award Agreement; an Equity Incentive Plan; and a Non-Competition Agreement.

The Severance Agreement provided for certain payments to be made to West if his employment with ACRE were terminated without "Cause." The Severance Agreement also referred to the Equity Award Agreement, which described incentive securities that were issued to West when he became an ACRE employee. These incentive securities were units of common equity that would vest over time as long as West remained employed.

The Equity Award Agreement also defined the term "Cause" to include: (i) the commission of an act involving dishonesty and disloyalty; (ii) failure to perform duties as directed by the Board; (iii) the "material breach of a fiduciary duty, gross negligence or willful misconduct with respect to [ACRE]…or the disclosure or unauthorized use of confidential or trade secret information"; and (iv) material breach of West's agreements with ACRE.

West claims that after LLR acquired its majority ownership interest in ACRE, LLR began to push management to create exit options. West claims that LLR instructed ACRE's management to consider four potential exit strategies for LLR. West argues that he was induced to provide confidential and proprietary information in order to facilitate these transactions.

ACRE argues that West used highly proprietary and confidential information without the approval or knowledge of ACRE's Board or owners. ACRE argues that West engaged an investment banking firm without Board approval, and without communicating his intentions to anyone on the Board. The Board terminated West after learning that he disclosed confidential information. ACRE argues that because the Board determined that West's actions were in breach of his employment agreement, the Board's termination of West was for Cause.

West argues that ACRE has "manufactured" Cause after the fact, and that West was merely acting at the direction of the Board. Accordingly, West has filed this action and has alleged several claims against ACRE:

I.      Wrongful termination – Against all Defendants;

II.     Breach of the Covenant of Good Faith and Fair Dealing – Against Defendants ACRE and Grillo;

III.    Breach of Contract – Against Defendants ACRE and Grillo;

IV.     Tortious Interference with Contract – Against Defendants LLR Equity Partners, IV, L.P., LLR Equity Partners Parallel IV, L.P., Seth Lehr, David Stienes, Gregory Case, Robert Chefitz, and Joseph Grillo;

V.      Tortious Interference with Prospective Business Relations – Against all Defendants;

4

VI.    Conversion – Against Defendant ACRE; and

VII.    Declaratory Relief – Against Defendant ACRE.

Defendants have moved for partial dismissal on several grounds. First, Defendants argue that West's claim for breach of contract against Grillo fails to state a claim for relief, because Grillo was not a party to the contracts that West claims were breached. Second, Defendants argue that an implied covenant is unnecessary to fill any gaps in the contracts between West and ACRE, which explicitly address the circumstances under which West could be terminated for Cause. Third, Defendants argue that West's conversion claim fails, because it is duplicative of his breach of contract claim against ACRE. Fourth, Defendants argue that West's claim for wrongful termination fails because only an employer can be liable for wrongful termination. Fifth, West's claim for tortious interference with contract must be dismissed because he fails to show that LLR and the Individual Defendants acted outside of the scope of their authority. Finally, Defendants argue that West's claim for tortious interference with prospective business relations fails to state a claim because his allegations are insufficient as a matter of law.

## MOTION TO DISMISS STANDARD

In a Rule 12(b)(6) Motion to Dismiss, the Court must determine whether the

claimant "may recover under any reasonably conceivable set of circumstances susceptible of proof."[1] The Court must accept as true all well-pleaded allegations.[2] Every reasonable factual inference will be drawn in the non-moving party's favor.[3] If the claimant may recover under that standard of review, the Court must deny the Motion to Dismiss.[4]

## ANALYSIS

### Implied Covenant of Good Faith and Fair Dealing

Every contract contains an implied covenant of good faith and fair dealing that "requires a 'party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits' of the bargain."[5] By definition, this covenant is implied. Therefore, "because it protects the spirit of the agreement rather than the form, it cannot be invoked where the contract itself expressly covers the subject at issue."[6] "[The Court] will only imply contract terms when the party asserting the

---

[1] *Spence v. Funk*, 396 A.2d 967, 968 (Del.1978).
[2] *Id.*
[3] *Wilmington Sav. Fund. Soc'v, F.S.B. v. Anderson*, 2009 WL 597268, at *2 (Del. Super.) (citing *Doe v. Cahill*, 884 A.2d 451, 458 (Del.2005)).
[4] *Spence*, 396 A.2d at 968.
[5] *Fisk Ventures, LLC v. Segal*, 2008 WL 1961156, at *10 (Del. Ch.)(citing *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005)(quoting *Wilgus v. Salt Pond Inv. Co.*, 498 A.2d 151, 159 (Del. Ch. 1985)).
[6] *Fisk Ventures*, 2008 WL 1961156, at *10.

6

implied covenant proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected."[7] "The 'implied covenant of good faith and fair dealing involves…inferring contractual terms to handle developments or contractual gaps that…neither party anticipated.'"[8]

In this case, "Cause" has been explicitly defined in the contract between ACRE and West. The Equity Award Agreement defined the term "Cause" as used in the Severance Agreement to include: (i) the commission of an act involving dishonesty and disloyalty; (ii) failure to perform duties as directed by the Board; (iii) the "material breach of a fiduciary duty, gross negligence or willful misconduct with respect to [ACRE]…or the disclosure or unauthorized use of confidential or trade secret information"; and (iv) material breach of Plaintiff's agreements with ACRE. The contract definition of Cause is not unusual. The definition does not create a gap in the contract for the Court to fill. The expectations of both parties were clear at the time the agreement was executed.

West claims that he was "tricked" into creating cause for termination. West believes that Cause was manufactured after the fact. The Court finds that assuming the truth of the facts, as alleged by West, ACRE's alleged trickery and

---

[7] *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010)(citing *Dunlap*, 878 A.2d at 442).
[8] *Nationwide Emerging Managers, LLC v. Northpointe Holdings, LLC*, 112 A.3d 878, 898 (Del. 2015)(quoting *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del.2010)).

course of dealing would prohibit a finding of Cause as defined by the contract. The term "Cause" itself is unambiguous and does not create a gap for the Court to fill.

Therefore, West's claim based on breach of the implied covenant of good faith and fair dealing must be dismissed.

## Wrongful Termination

Under California law, the elements of wrongful termination are: (1) an employer-employee relationship; (2) the termination of plaintiff's employment was in violation of a public policy[9]; (3) the termination of plaintiff's employment was a legal cause of plaintiff's damages; and (4) the nature and the extent of plaintiff's damages.[10]

In *Khajavi v. Feather River Anesthesia Med. Group*,[11] the court determined that "[o]nly an employer can be liable for the tort of wrongful discharge of an employee, and 'a third party who is not and never has been the plaintiff's employer cannot be bootstrapped by conspiracy into tort liability for a wrong he is legally incapable of committing.'"[12]

---

[9] California has identified, as an example, the public policy against terminating an employee in retaliation for reporting an employer's misconduct.

[10] *See Holmes v. General Dynamics Corp.*, 17 Cal.App.4th 1418, 1426 n.8 (Cal. Ct. App. 1993).

[11] 84 Cal.App.4th 32 (Cal. Ct. App. 2000).

[12] *Id.* at 38 (quoting *Weinbaum v. Goldfarb, Whitman & Cohen*, 46 Cal.App.4th 1310, 1317 (Cal. Ct. App. 1996)).

In this case, ACRE is West's employer. West has not shown that the individuals named in this action, or LLP, are West's employers. "The key factor to consider in analyzing whether an entity is an employer is 'the right to control and direct the activities of the person rendering service, or the manner and method in which the work is performed.'"[13] "A finding of the right to control employment requires ... a comprehensive and immediate level of 'day-to-day' authority over employment decisions."[14]

West argues that "a defendant who is not a direct employer may be held liable on a wrongful termination claim as a joint employer when the defendant had 'the right to control and direct the activities of the [employee], or the manner and method in which the work is performed.'"[15]

The Court finds that West has not provided *prima facie* evidence that the individual Defendants, or LLP, are West's employers under a joint employer theory. West has not presented any authority or evidentiary allegations supporting the proposition that West's supervisors, board members, or officers qualify for the exception to the rule that a wrongful termination suit must be against a direct employer.

---

[13] *Doe I v. Wal-Mart Stores Inc.*, 572 F.3d 677, 682 (9th Cir. 2009)(quoting *Service Employees International Union v. County of Los Angeles*, 225 Cal.App.3d 761, 769 (Cal. Ct. App. 1990)).
[14] *Doe I*, 572 F.3d at 682 (quoting *Vernon v. State of California*, 116 Cal.App.4th 114, 127-28 (Cal. Ct. App. 2004)).
[15] Compl. at 14 (quoting *Doe I v. Wal-Mart Stores Inc.*, 572 F.3d 677, 682 (9th Cir. 2009)).

West has not shown that the individual Defendants, or LLP, had "a comprehensive and immediate level of 'day-to-day' authority"[16] over West. West has not shown that these Defendants exercised the level of control that would expose them to liability under a joint employer theory.

Under California law, a plaintiff must show that a termination violated public policy in order to succeed on a tortious wrongful-termination claim.[17] For example, in *Petermann v. International Brotherhood of Teamsters*,[18] the plaintiff brought a wrongful discharge action against a union. The plaintiff alleged that he had been dismissed for refusing to testify falsely under oath at his employer's direction. The court held:

> The commission of perjury is unlawful.... It would be obnoxious to the interests of the state and contrary to public policy and sound morality to allow an employer to discharge any employee, whether the employment be for a designated or unspecified duration, on the ground that the employee declined to commit perjury, an act specifically enjoined by statute .... The public policy of this state as reflected in the Penal Code sections referred to above would be seriously impaired if it were to be held that one could be discharged by reason of his refusal to commit perjury. To hold that one's continued employment could be made contingent upon his commission of a felonious act at the instance of his employer would be to encourage criminal conduct upon the part of both the employee and employer and serve to contaminate the honest administration of public affairs....[19]

---

[16] *Doe I v. Wal-Mart Stores Inc.*, 572 F.3d 677, 682 (quoting *Vernon v. State of California*, 116 Cal.App.4th 114, 127-28 (Cal. Ct. App. 2004)).
[17] *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 172 (Cal. 1980).
[18] 174 Cal.App.2d 184 (Cal. Ct. App. 1959).
[19] *Id.* at 188-89.

It is not sufficient for a plaintiff to make vague allegations of illegal activity. These types of allegations, "unaccompanied by citations to specific statutes or constitutional provisions," are insufficient because the court is forced to "guess at the nature of the public policies involved, if any."[20] The plaintiff bears the burden of identifying specific statutes implicated by the claim.[21]

West has not identified a specific statute, regulation, or constitutional provision entitling him to relief under this claim. Therefore, the claim for wrongful termination must be dismissed as to all Defendants except West's employer, ACRE, regardless of whether Delaware or California law applies.

## Conversion

The focus of West's claim for conversion is the 488 common units of which Defendants took control. These common units are a future entitlement that is guaranteed by contract.

The Court finds the conversion claim to be duplicative of West's breach of contract claim. "Under Delaware law, a plaintiff bringing a claim based entirely upon a breach of the terms of a contract generally must sue in contract, and not in

---

[20] *Turner v. Anheuser-Busch, Inc.*, 7 Cal.4th 1238, 1257 (Cal. 1994).
[21] *Green v. Ralee Engineering Co.*, 19 Cal.4th 66, 78 (Cal. 1998).

tort."[22] "[C]ourts recognize that a breach of contract will not generally constitute a tort."[23]

Defendants concede that if they are liable for breach of contract, then the 488 common units potentially could be part of the measure of damages. Therefore, because West has not alleged a separate conversion theory under which he may be entitled to relief, the claim for conversion must be dismissed.

**Tortious Interference**

Under Delaware law, a claim for tortious interference with a contract has five elements: "(1) a valid contract; (2) about which the defendants have knowledge; (3) an intentional act by the defendants that is a significant factor in causing the breach of the contract; (4) done without justification; and (5) which causes injury."[24]

In *Kuroda v. SPJS Holdings, LLC, et al.*,[25] the Court found that the plaintiff had not properly stated a claim for tortious interference with a contract because the complaint was "devoid of any factual allegations that lead to a reasonable

---

[22] *Data Management Internationale, Inc. v. Saraga*, 2007 WL 2142848, at *3 (Del. Super.).
[23] *Id.*
[24] *Gill v. Delaware Park, LLC*, 294 F.Supp.2d 638, 645 (D. Del. 2003); *Aspen Advisors LLC v. United Artists Theatre Co.*, 861 A.2d 1251, 1265-66 (Del. 2004).
[25] 971 A.2d 872 (Del. Ch. 2009).

inference" to support a claim that the LLC exceeded the scope of its agency.[26] The Court dismissed the plaintiff's claim for tortious interference with a contract.[27]

Whether the individual defendants and LLR acted within their scope of authority or not is a question of fact. In *Smith v. Hercules, Inc.*,[28] the Court declined to make a determination of whether or not a party acted within the permissible scope of a CEO.[29] The Court determined that the motion to dismiss stage was too early to decide whether or not the defendant company's CEO acted within his scope of employment.[30] The Court decided to wait until the "record [was] more fully developed."[31]

The *Smith* Court also explained that the CEO of the defendant corporation was "not immunized from all liability simply because he [held] the position of CEO."[32] Individuals can induce a corporation to breach a contract, but cannot expect to be shielded from liability merely because of their title.

In addition to West's tortious interference with a contract claim, West also alleges tortious interference with prospective business relations. "To sustain a

---

[26] *Id.* at 885-86.
[27] *Id.* at 886.
[28] 2002 WL 499817 (Del. Super.).
[29] *Id.* at *3.
[30] *Id.*
[31] *Id.* at *4; *see also Wagenhoffer v. VisionQuest Nat'l Ltd.*, 2016 WL 4053117, at *1-2 (Del. Super.)("Whether an employee has acted beyond the scope of employment is generally a question for the jury...")(citing *Nelson v. Fleet Nat. Bank*, 949 F.Supp. 254, 263 (D. Del. 1996)).
[32] *Smith v. Hercules*, 2002 WL 499817, at *3 (Del. Super.).

claim for intentional interference with prospective contractual relations, a plaintiff must establish: '(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with the opportunity, (c) proximate causation, and (d) damages, all of which must be considered in light of defendant's privilege to compete or protect his business interests in a fair and lawful manner....'"[33]

In *Kuroda v. SPJS Holdings, LLC*,[34] the plaintiff alleged that defendants interfered with plaintiff's future business relations by making disparaging remarks about plaintiff's business acumen. The plaintiff's claims focused around the defendants' alleged bad motives.[35] However, the Court notes that even if Defendants acted with bad motives, Defendants still could be acting within their scope of authority.

The Court finds that West has demonstrated a *prima facie* case for tortious interference with a contract and interference with prospective business relations. The allegations are more than conclusory. Accepting the facts in the light most favorable to the plaintiff at this stage in the proceedings, West has stated claims for

---

[33] *Lipson v. Anesthesia Services, P.A.*, 790 A.2d 1261, 1285 (Del. Super. 2001)(quoting *DeBonaventura v. Nationwide Mut. Ins.*, 419 A.2d 942, 947 (1980)(citing *Bowl–Mor Company, Inc., v. Brunswick Corp.*, 297 A.2d 61 (Del. Ch. 1972); *Regal Home Distribs., Inc. v. Gordon*, 66 A.2d 754 (Del. Super. 1949))); *see also Beard Research, Inc. v. Kates*, 8 A.3d 573, 608 (Del. Ch. 2010).
[34] 971 A.2d 872 (Del. Ch. 2009).
[35] *Id.* at 886.

both of these tort claims.[36]  The Court also is not convinced that the tort claims will increase the scope of discovery in any material way.  Therefore, the motion to deny the tortious interference claims is hereby denied.

### Breach of Contract Against Grillo Individually

Grillo signed West's employment contract in his capacity as CEO, not as an individual party to the contract.[37]  It appears undisputed that Grillo signed as CEO.[38]

"Delaware law clearly holds that officers of a corporation are not liable on corporate contracts as long as they do not purport to bind themselves individually."[39]  Grillo did not purport to bind himself individually under the contract, only in his capacity as CEO.  Therefore, the breach of contract claim against Grillo individually must be dismissed.

---

[36] The Court already has found that the Court of Chancery has exclusive jurisdiction over fiduciary claims.  The elements of tortious interference are different from breach of a fiduciary duty.  Although the claims are similar, and appear to arise from the same alleged conduct, that does not mean that the claims are not distinct.  The Court's analysis for purposes of the instant motion is to determine whether Plaintiff has established a *prima facie* case for tortious interference.  The Court has found that the claim is sufficient to proceed.

[37] *See* Severance Agreement at 6; *see also* Equity Award Agreement at 4.

[38] However, whether or not this makes Grillo liable as an employer under the contract is disputed.

[39] *Wallace ex re. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999); 6 Del. C. § 18-303(b).

## Motion for Leave to Amend

West's motion for leave to amend is futile. "[L]eave shall be freely given when justice so requires," but "should be denied when the proposed amendment would be futile."[40] "A motion for leave to amend a complaint is futile where the amended complaint would be subject to dismissal under Rule 12(b)(6) for failure to state a claim."[41]

The claims dismissed in this Opinion cannot be cured by any foreseeable amended pleading. Therefore, West's motion for leave to amend must be denied.

---

[40] Super Ct. Civ. R. 15(a).

[41] *Incyte Corporation v. Flexus Biosciences, Inc.*, 2018 WL 6428155, at *9 (Del. Super.)(citing *Clark v. State Farm Mutual Automobile Insurance Company*, 131 A.3d 806, 811-12 (Del. 2016)).

16

## CONCLUSION

The Court finds that West has not stated a claim for breach of the implied covenant of good faith and fair dealing. The contract definition of "Cause" is unambiguous. West has not shown that the Court must fill gaps in the contract, or otherwise supply terms to define ambiguous language in the contract.

**THEREFORE, Defendants' Motion to Dismiss the breach of the implied covenant of good faith and fair dealing is hereby GRANTED.**

The Court finds that West has not shown that the individual Defendants or LLP should be treated as employers, which is required for West's wrongful termination claim. Additionally, West has not enumerated any specific public policy violation, as is a prerequisite under California law. However, the Court finds that West has stated a claim for wrongful termination against West's employer, ACRE.

**THEREFORE, Defendants' Motion to Dismiss the wrongful termination claims are hereby GRANTED as to all Defendants except ACRE.**

The Court finds that West's claim for conversion is duplicative of its breach of contract claim. West has failed to state a separate claim for conversion.

**THEREFORE, Defendants' Motion to Dismiss the conversion claim is hereby GRANTED.**

17

The Court finds that West has demonstrated a *prima facie* case for tortious interference with a contract, and tortious interference with prospective business relations. Whether or not the officers and directors were acting within their scope of authority is a question of fact. It is too early in the proceedings for the Court to make this decision as a matter of law.

**THEREFORE, Defendants' Motion to Dismiss the tortious interference claims is hereby DENIED.**

The Court finds that Joseph Grillo signed West's employment contract in his capacity as CEO. Joseph Grillo did not purport to bind himself individually.

**THEREFORE, Defendants' Motion to Dismiss the breach of contract claim against Joseph Grillo individually is hereby GRANTED.**

The Court finds that West's Motion for Leave to Amend is futile. The claims in this Opinion cannot be cured by any foreseeable amended pleading.

**THEREFORE, West's Motion for Leave to Amend is hereby DENIED.**

**IT IS SO ORDERED.**

_____

The Honorable Mary M. Johnston

18