

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-7-1994

# ALA, Inc. v. CCAIR, Inc.

Precedential or Non-Precedential:

Docket 93-5688

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

## Recommended Citation

"ALA, Inc. v. CCAIR, Inc." (1994). *1994 Decisions*. Paper 78.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/78

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 93-5688
_____

ALA, INC., A Maryland Corporation;
LARRY H. SCHATZ, an individual residing in,
and a citizen of, the State of New York,

v.

CCAIR, INC., a Delaware Corporation

ALA, Inc. and Larry H. Schatz, Appellants

_____

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civ. No. 93-cv-01554)

_____

Argued: May 13, 1994

Before: BECKER and LEWIS, Circuit Judges, and
POLLAK, District Judge.°

(Filed:  July 7, 1994)

THOMAS J. BRADLEY, Esquire (ARGUED)
STEVEN B. KANTROWITZ, Esquire
McBreen, McBreen & Kopko
1760 Market Street, Suite 900
Philadelphia, PA  19104

Attorneys for Appellants
ALA, Inc. and Larry H. Schatz


STEVEN J. FRAM, Esquire (ARGUED)
PATRICIA L. CARBONE, Esquire
Archer & Greiner

_____

°The Honorable Louis H. Pollak, United States District Judge for
the Eastern District of Pennsylvania, sitting by designation.

A Professional Corporation
One Centennial Square
Haddonfield, NJ  08033
<u>Attorneys for Appellee</u>
<u>CCAIR, Inc.</u>

---

**OPINION OF THE COURT**

---

BECKER, <u>Circuit Judge</u>.

This appeal requires us to construe the statute of frauds governing the sale of securities under Article 8 of the Uniform Commercial Code ("U.C.C.") as enacted by New Jersey and North Carolina, the two jurisdictions relevant to this dispute. The question presented is whether the district court, pursuant to Federal Rule of Civil Procedure 12(b)(6), properly dismissed the claim of plaintiff ALA, Inc. ("ALA") that defendant CCAIR, Inc. ("CCAIR") was in breach of an alleged agreement to sell ALA a controlling block of its common stock on the ground that the statute of frauds, § 8-319 of the U.C.C., N.J. Stat. Ann. §12A:8-319; N.C. Gen. Stat. § 25-8-319, made the alleged agreement unenforceable.

ALA assigns two grounds of error.  First it argues that the district court erred in holding that a letter outlining the terms of the proposed deal that CCAIR's CEO Kenneth Gann sent to ALA's investment banker Larry Schatz was insufficient to satisfy § 8-319(a) of the statute, which provides that the statute of frauds is satisfied if there is a "writing signed by the party against whom enforcement is sought . . . sufficient to indicate

that a contract has been made for sale of a stated quantity of described securities at a defined or stated price." ALA also submits that the district court's order dismissing the action was premature because § 8-319(d), which provides that the statute of frauds is satisfied if a party against whom enforcement is sought admits in a "pleading, testimony or otherwise in court that a contract was made," entitled it to an opportunity for discovery during which such an admission might be obtained, and hence precluded the granting of a Rule 12(b)(6) motion.

Although we agree with the district court that the Gann letter does not sufficiently indicate that a contract had been made and thus that § 8-319(a) was not satisfied, we agree with ALA that § 8-319(d) of the statute prevents the district court from granting a Rule 12(b)(6) dismissal here. In order to give effect to § 8-319(d), ALA must have some opportunity to secure an admission from CCAIR. We will therefore vacate the order of dismissal and remand the case to the district court with directions to grant ALA limited discovery to determine whether CCAIR will admit that an agreement was made. We note that at the close of that limited discovery, the district court may again address the statute of frauds issue in a motion for summary judgment.

## I. BACKGROUND

In late 1992 and early 1993, ALA, an investment firm based in New Jersey, became interested in making an investment in CCAIR, an airline based in North Carolina, which operates the commuter airline USAir Express. In early January 1993, it

instructed investment banker Larry Schatz (also an appellant in this case) to approach CCAIR and explore the possibility of a major stock transaction. Schatz contacted the officers of CCAIR and told them that he had a client who was interested in purchasing a sizeable stake in the company. The CCAIR officials expressed interest and a meeting was scheduled for January 18. On that date, Schatz, acting as the agent for ALA, met with upper level management of CCAIR, including a majority of the CCAIR Board of Directors, in North Carolina.

According to ALA's complaint, the two companies struck a deal at the meeting in which ALA agreed to buy and CCAIR agreed to sell approximately 3.5 million shares of authorized but unissued CCAIR stock for $3.15 per share or some lesser figure to be agreed upon by the parties. Although the agreement reached at the meeting was oral, it was, ALA submits, memorialized by a letter Kenneth Gann, President and CEO of CCAIR, sent to Schatz on January 18, 1993 (the "Gann letter"). The Gann letter stated:

Dear Mr. Schatz:

It was a pleasure meeting with you today and exploring with you the investment potential of CCAIR (the "Company").

If your clients acquire the remaining approximately 3.5 million authorized but unissued common shares of the Company on or before ninety (90) days from the date hereof for $3.15 per share or such lesser amount [as] may be agreed by your client and the Company, we agree to pay you at the time of said share acquisition, an investment banking fee of $.15 per share.

In connection therewith, we will cause the appointment of two (2) nominees of your client to serve

as board members of the Company for the remaining unexpired term of this current board.

Further, we agree to provide your client with such information as may be requested by your client in connection with the customary and permissible due diligence in a private place by a company whose securities are publicly traded.

The Company's agreement to complete this transaction is of course subject to our reasonable approval of your clients, the prior sale of the same securities and the requisite corporate approvals of both the Company and the purchasers.

If the foregoing accurately sets forth your understanding of the proposed transaction, please so indicate by executing and returning to me a copy of this letter.

Thank you.

CCAIR, Inc.

By:(s) Kenneth W. Gann
    Kenneth W. Gann,
    President

Gann signed the letter, and Schatz agreed and accepted its terms by returning a signed copy.

Shortly after January 18, the parties took a number of steps to consummate the deal. On January 25 they entered into a confidentiality agreement in which they agreed not to disclose confidential information exchanged between them. On January 26, the representatives for each party met in New Jersey to discuss how financial and other confidential information would be exchanged, and they decided that further refinement of the transaction would be handled by counsel. On February 3, counsel for ALA forwarded a term sheet to CCAIR outlining the terms for

the purchase of CCAIR common stock.  It proposed that ALA acquire the stock at $2.65 per share.

On February 11, however, CCAIR abruptly terminated discussions with ALA and told ALA that it no longer wished to complete the transaction.  Although ALA tried to revive the negotiations by submitting a revised term sheet offering to purchase the securities for $3.15 per share, CCAIR was unmoved.[0] Once it became clear to ALA that it could not persuade CCAIR to close the deal, both ALA and Schatz sued CCAIR in federal district court in New Jersey for breach of the agreement allegedly reached on January 18.  ALA sought specific performance of the contract and Schatz sought a commission.[0]

Instead of answering the complaint, CCAIR filed a motion to dismiss for failure to state a claim upon which relief may be granted.  See Fed. R. Civ. P. 12(b)(6).[0]  The district court granted the motion, holding that § 8-319 made the agreement alleged by ALA unenforceable.

---

[0]CCAIR apparently decided to terminate discussions because its publicly traded stock price shot up shortly after the meeting with Schatz on January 18.  Around January 26 CCAIR's stock was trading at $4.50.  By April 7, the time ALA filed its complaint, CCAIR's stock was trading at $9.00 per share.

[0]Subject matter jurisdiction was based on diversity of citizenship.  See 28 U.S.C. § 1332.  ALA is a Maryland corporation with its principal place of business in New Jersey; Larry Schatz is a citizen of New York; and CCAIR is a Delaware corporation with its principal place of business in North Carolina.

[0]The day after ALA filed its complaint, CCAIR had filed a lawsuit in North Carolina state court seeking a declaration that no contract existed.  ALA removed it to the federal district court for the Western District of North Carolina and then filed a motion to enjoin the proceeding, which CCAIR did not oppose.

Section 8-319, the statute of frauds for securities transactions, provides in pertinent part:

> A contract for the sale of securities is not enforceable by way of action or defense unless:
>
> (a) There is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker, sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; [or]
>
> . . .
>
> (d) The party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for the sale of a stated quantity of described securities at a defined or stated price.[0]

N.J. Stat. Ann. § 12A:8-319.[0] During the motion proceedings, ALA argued that the Gann letter was a writing sufficient to satisfy subsection (a) and that the language of subsection (d) made any Rule 12(b)(6) motion premature because it was possible for CCAIR to make admissions during the course of discovery that would allow ALA to satisfy the statute.

The district court rejected these contentions and granted the motion to dismiss. The court held that the Gann

---

[0]ALA concedes that neither section (b) nor section (c) of the statute was satisfied, and they are not at issue.

[0]Although it has not been resolved whether North Carolina or New Jersey law applies to this action, both states have adopted the same relevant language from Article 8 of the U.C.C., see N.J. Stat. Ann. § 12A:8-319; N.C. Gen. Stat. § 25-8-319, and no conflict appears in the relevant case law. Therefore, no choice of law analysis need be performed. See Lucker, Unit of Amclyde Engineered Prods., Inc. v. The Home Ins. Co., Slip Op. No. 93-1414, 8-9 (3d Cir. May 12, 1994). For convenience only, citations will be to the New Jersey statute.

letter did not satisfy § 8-319(a) because it did not constitute a contract for the sale of securities. It rejected ALA's claim that § 8-319(d) made the dismissal premature because "taking into account the allegations in [the plaintiffs'] complaint and the exhibits attached thereto, it seems highly unlikely that plaintiffs could ever obtain this admission."[0] ALA claims that both of these grounds for dismissal were erroneous. Our review of the order granting the dismissal is plenary.[0]

## II. DISCUSSION

### A. The Rule 12(b)(6) Standard

In considering whether a complaint should have been dismissed for failure to state a claim upon which relief can be granted, the court must consider only those facts alleged in the complaint and accept all of the allegations as true. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984). Unless the plaintiff can prove no set of facts in support of the claim that would entitle him to relief, the complaint should not be dismissed. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957); D.P. Enters., Inc. v. Bucks County Community College, 725 F.2d 943, 944 (3d Cir. 1984). When reviewing a complaint, a court should consider not only the allegations contained in the complaint itself but also the exhibits attached

---

[0] Having concluded that there was no enforceable contract, the district court also concluded that Schatz was not entitled to a commission and dismissed his claim. Because Schatz's claim for a commission rises or falls with ALA's claim, we will deal only with ALA's claim herein.

[0] We have jurisdiction over this appeal from a final order pursuant to 28 U.S.C. § 1291.

to it which the complaint incorporates pursuant to Federal Rule of Civil Procedure 10(c).  See Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); cf. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may also consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document"), cert. denied, 114 S. Ct. 687 (1994).[0]

Finally, a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense, like the statute of frauds, appears on its face.  Continental Collieries, Inc. v. Shober, 130 F.2d 631, 635 (3d Cir. 1942) ("where the defect [of the statute of frauds] appears on the face of the pleading, the question may be raised on motion to dismiss for insufficiency"); see 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 358-59 (1990) (citing cases).[0]  With these

---

[0]Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control.  See Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206-07 (5th Cir. 1975).
[0]In Currier v. Knapp, 442 F.2d 422 (3d Cir. 1971) (per curiam) we held that the statute of frauds defense could not be raised in a motion to dismiss.  Currier involved a motion to dismiss an action seeking specific performance of a realty contract on the ground that the complaint did not allege the existence of a writing necessary to satisfy the statute of frauds.  The panel held that the motion was improper because the statute of frauds defense was an affirmative defense that needed to be set forth in the answer, and the defendant had filed none.  Id. at 422-23.  To the extent Currier ignored Continental Collieries and held that the statute of frauds defense could never be raised on a Rule 12(b)(6) motion to dismiss it is inconsistent with Continental Collieries and does not bind us.  See O. Hommel Co. v. Ferro

standards in mind, we now consider each ground for the district court's dismissal.

### B. Section 8-319(a) and the Gann Letter

An oral agreement for the sale of securities is unenforceable unless the party seeking to enforce the agreement produces a writing signed by the party against whom enforcement is sought "sufficient to indicate that a contract has been made for sale of a stated quantity of securities at a defined or stated price." N.J. Stat. Ann. § 12A:8-319(a). The writing need not be the contract itself, and it need not contain all of the terms of the agreement to satisfy § 8-319(a). It must merely

---

Corp., 659 F.2d 340, 354 (3d Cir. 1981), cert. denied, 455 U.S. 1017, 102 S. Ct. 1711 (1982) ("a panel of this court cannot overrule a prior panel precedent. . . . To the extent that [the later case] is inconsistent with [the earlier case, the later case] must be deemed without effect."); Pfeiffer v. Marion Ctr. Area Sch. Dist., 917 F.2d 779, 781 (3d Cir. 1990) (applying O. Hommel).

The Continental Collieries rule appears to be the better approach at all events, for the weight of authority is that the statute of frauds defense can be raised in a Rule 12(b)(6) motion. It makes sense to allow an affirmative defense to be raised in a motion to dismiss "because of the obvious advantage of raising a potentially dispositive issue by preliminary motion instead of requiring a responsive pleading. Moreover, plaintiff is not seriously prejudiced by having his complaint dismissed at a relatively early stage, since he generally will be permitted to amend his pleading if the defect can be cured." 5A Wright & Miller at § 1357, at 351. Indeed, we have recognized that other affirmative defenses may properly be raised in a motion to dismiss. See, e.g., Davis v. Grusemeyer, 996 F.2d 617 (3d Cir. 1993) (affirming 12(b)(6) dismissal of complaint as being barred by statute of limitations). By returning to the Continental Collieries rule we remove an anomaly in our jurisprudence.

evidence the existence of the contract, state the quantity of securities agreed to be sold, and state the price.[0]

ALA argues that the Gann letter satisfies the writing requirement of § 8-319(a).  The language upon which ALA relies appears in the second paragraph of the letter:

> If your clients acquire the remaining approximately 3.5 million authorized but unissued common shares of the Company on or before ninety (90) days from the date hereof for $3.15 per share or such lesser amount [as] may be agreed by your client and the Company, we agree to pay you at the time of said share acquisition, an investment banking fee of $.15 per share.

This paragraph, ALA contends, contains both a stated quantity and a stated price and, since the letter is signed by Kenneth Gann, the letter satisfies the three critical terms of § 8-319(a).

CCAIR counters that this language in the Gann letter did not confirm the existence of a deal for a stated quantity and price.  In its submission, the letter, taken as a whole, merely

---

[0] The district court suggested in its opinion that in order to satisfy § 8-319(a) the Gann letter itself needed to constitute a written contract:  it framed the issue before the court as "whether the Gann letter constitutes a contract for the sale of the securities."  We do not believe that § 8-319(a) can be read in that way.  The language of the statute simply requires a writing "sufficient to indicate" that a contract has been made for a stated quantity of securities at a stated price.  A carefully prepared written contract would be sufficient, but it is not necessary.  See Konsuvo v. Netzke, 220 A.2d 424, 436 (N.J. Super. 1966) (suggesting that a letter or minutes of a meeting would be sufficient under appropriate circumstances (quoting N.J.S.A § 12A:8-319, New Jersey Study Comment note 6 ("It is no longer necessary to produce a memorandum.  The plaintiff merely has to produce a signed writing sufficient to 'indicate that a contract has been made' . . . .  The important elements which must appear in the signed writing are the quantity of described securities and a definable or stated price.") (internal quotation marks omitted))).  Thus the district court erred to the extent it held that the Gann letter did not satisfy the statute of frauds because it was not itself a contract.

promised to pay Schatz a commission "if" the deal went through. At most, says CCAIR, the Gann letter revealed the existence of a proposed transaction contingent on future successful negotiations. And writings that merely evidence the existence of negotiations, CCAIR argues, do not satisfy § 8-319(a). We agree.

Although there are no New Jersey cases on point, all of the case law interpreting § 8-319(a), including case law from North Carolina, has held that writings that merely evidence that the parties were negotiating a contract are insufficient to satisfy § 8-319(a). See Oakley v. Little, 272 S.E.2d 370, 373 (N.C. App. 1980) ("Where writings only represent negotiations for agreements to be made in the future the courts have held under U.C.C. § 2-201 that they were not binding contracts. . . . [P]laintiff's exhibits are insufficient to show a contract for the sale of the stock [under § 8-319(a)], because they merely represent tentative negotiations." (citations omitted)); Cramer v. Devon Group, Inc., 774 F. Supp. 176, 182-183 (S.D.N.Y. 1991) (holding that letters showing the parties were negotiating a purchase of shares were insufficient to satisfy § 8-319(a)); Anderson Chem. Co. v. Portals Water Treatment, 768 F. Supp. 1568, 1577-78 (M.D. Ga. 1991) (holding that an extremely detailed letter of intent contemplating subsequent definitive purchase and merger agreements was insufficient to satisfy § 8-319(a)), aff'd in part and rev'd in part without op., 971 F.2d 756 (11th Cir. 1992); cf. Conaway v. 20th Century Corp., 420 A.2d 405, 412-413 (Pa. 1980) (holding that writings which merely show a plan, a proposal, or an offer which looked to some future relationship

but which do not evidence an existing contract are insufficient to satisfy U.C.C. § 2-201) (citing cases).[0]

Thus, although ALA correctly argues that the Gann letter need not contain all of the terms of the contract, it must at least establish the existence of a contract.  This it does not do.  The language of the letter does no more than reference past negotiations and contemplate a proposed transaction.  The price term in the letter is fluid.  Moreover, the letter states that the completion of the "proposed transaction" was "subject to our reasonable approval of your clients, the prior sale of the same securities and the requisite corporate approvals."  In our view, a fair reading of the letter shows that it was simply a confirmation on the part of Gann that CCAIR would pay Schatz a commission if the deal went through.[0]

---

[0]As CCAIR points out, the New Jersey courts have held, in interpreting other uniform laws, that the opinions of sister states "are of signal import, and [the New Jersey courts] are more or less imperatively obliged to recognize their value as a guiding precedent." State v. Weissman, 179 A.2d 748, 752 (N.J. Super.) (interpreting Uniform Narcotic Drug Law), certif. denied, 181 A.2d 782 (N.J. 1962); see N.J. Stat. Ann. § 12A:1-102(2)(c) ("Underlying purposes and policies of this act are . . . (c) to make uniform the law among the various jurisdictions.").

[0]We note, however, that although the proffered writing is not adequate to satisfy the statute of frauds and, by itself, leaves doubt that an agreement was reached at all, it is by no means clear that an agreement was not reached at the North Carolina meeting.  The letter shows that the parties discussed in detail the most critical terms of the proposed transaction (price and quantity) and the subsequent actions of the parties were focussed on details of completing the transaction.  Thus, as is discussed below, the district court prematurely concluded it unlikely that an admission from CCAIR would be forthcoming.

At all events, the Gann letter leaves considerable doubt as to whether there was any agreement at all. And "'if the proffered writings permit doubt as to the existence or nature of the contractual relationship, the inquiry is terminated and the agreement deemed unenforceable.'" Cramer, 774 F. Supp. at 183 (quoting Horn & Hardast Co. v. Pillsbury Co., 888 F.2d 8, 11 (2d Cir. 1989)). Therefore the letter does not satisfy § 8-319(a) and hence we turn to the question whether § 8-319(d) precludes a Rule 12(b)(6) dismissal.

## C. Section 8-319(d) and Rule 12(b)(6)

Section 8-319(d) of the U.C.C. provides that an oral contract for the sale of securities is enforceable by way of action or defense if "the party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract was made for the sale of a stated quantity of described securities at a defined or stated price." See N.J. Stat. Ann. § 12A:8-319(d). According to ALA, § 8-319(d) gives a plaintiff the right to ask the defendant to admit the fact that an oral contract was made, and thus precludes the granting of a Rule 12(b)(6) motion on statute of frauds grounds in most cases because to do so would deprive the plaintiff of any opportunity to get such an admission. We agree.

The purpose of the statute of frauds in the U.C.C. is evidentiary -- to protect people from fraudulent claims that a

contract did or did not exist.[0]  See 2 William Hawkland, Uniform
Commercial Code Series § 2-201:01 (1992) ("The purpose of the
statute of frauds is to protect people against misunderstanding
and fraud arising out of alleged oral contracts."); 7 id. at § 8-
319:01 (stating that § 8-319 mirrors §2-201 and that cases
interpreting § 2-201 should also apply to cases involving § 8-
319).[0]  Section 8-319(d) is an important component of this

---

[0] We recognize that an alternative justification often given for
the statute of frauds is that it performs a cautionary and
channeling function.  See, e.g., E. Allan Farnsworth, Farnsworth
on Contracts § 6.1, at p. 85 (1990) (noting that the most durable
and well-regarded of the statute of frauds' provisions perform
important cautionary and channeling functions).  In other words,
the statute may principally operate to ensure that in certain
circumstances, a person who enters into an agreement hastily will
not be bound until that person soundly decides, through the
formal act of signing his or her name to a paper containing a
quantity and price, that he or she will be bound by the
agreement.  Under such a view, whether the defendant did or did
not enter into an oral agreement is irrelevant.  All that matters
is that the person sought to be charged has, after careful
reflection, decided that he or she will be bound and is
signalling that to the world.
          But the cautionary and channeling justification does
not appear to be what is driving § 8-319, since such a
justification does not square with § 8-319(d).  To begin with, if
the cautionary and channeling function were the principal one,
§8-319(d) would be unnecessary since a party deciding to be bound
by an oral contract could simply waive the statute of frauds
defense at any time in the litigation.  In addition, admissions
during the course of a litigation would appear to serve only a
negligible cautionary or channeling purpose.  Since answers given
in discovery must be truthful, a defendant must admit to the
existence of a contract regardless of whether he or she intends
to be bound.
[0]Consistent with this general evidentiary function, § 8-319 makes
oral agreements enforceable not only where there is a writing,
but also where there is evidence that is just as good as a
writing, such as when there is delivery or payment of the stock,
or written confirmation.  See N.J. Stat. Ann. § 12A:8-319(b)
(delivery or payment has been made) and N.J. Stat. Ann. §12A:8-
319(c) (written confirmation).

general policy since judicial admissions are good evidence that an agreement had been made. And § 8-319(d) shows that the drafters of the U.C.C. recognized that fraud can work in both directions: while § 8-319(a) protects defendants against fraudulent claims that a contract <u>has</u> been made, § 8-319(d) protects plaintiffs from fraudulent claims that a contract <u>has not</u> been made.

In order for § 8-319(d) to function, the plaintiff must have some opportunity to obtain an admission from the defendant. A Rule 12(b)(6) motion, however, would derail the plaintiff's case pre-pleading and allow the defendant to defeat a cause of action on an oral contract before the plaintiff has any opportunity to seek an admission that a contract existed. Allowing a defendant to dispose of a case on a Rule 12(b)(6) motion would eviscerate § 8-319(d) and potentially allow a defendant to avoid the obligations of an oral contract into which he or she actually entered.[0]

Thus many courts have concluded that motions to dismiss based on the statute of frauds are improper. See <u>Weiss v. Wolin</u>, 303 N.Y.S.2d 940, 943-44 (Sup. Ct. 1969) (explaining that

---

[0]In addition, "[t]here is no justification for dismissing a complaint for insufficiency of statement, except where it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of the claim. No matter how likely it may seem that the pleader will be unable to prove his case, he is entitled, upon averring a claim, to an opportunity to try to prove it." <u>Continental Collieries</u>, 130 F.2d at 635 (citation omitted). Given the language of § 8-319(d), the allegation here that an agreement was reached raises the possibility that the defendant will admit to it and so it is possible that the statute of frauds will be satisfied.

to sustain a demurrer under § 8-319 would deprive the plaintiff of an opportunity to get the defendant to admit "in his pleadings, testimony or otherwise" that a contract was made); Garrison v. Piatt, 147 S.E.2d 374, 375-76 (Ga. App. 1966) ("[Section 8-319(d)] was designed to prevent the statute of frauds itself from becoming an aid to fraud, by prohibiting one claiming the benefit of the statute who admits in the case the oral contract sued upon."); cf. Lewis v. Hughes, 346 A.2d 231, 236 & n.10 (Md. 1975) (rejecting a demurrer based on § 2-201); M & W Farm Serv. Co. v. Callison, 285 N.W.2d 271 (Iowa 1979) (same); Duffee v. Judson, 380 A.2d 843, 847 (Pa. Super. 1977) (same); Dangerfield v. Markel, 222 N.W.2d 373, 378 (N.D. 1974) (same); see also Boylan v. G.L. Morrow Co., 468 N.E.2d 681, 688 (N.Y. 1984) (Meyer, J., dissenting) ("[I]f a defendant could prevail simply by raising the Statute of Frauds in a prepleading motion to dismiss, the admission exception would be vacuous. The defendant never would have to face the choice of admitting or denying the contract . . . . [T]he provision is designed to discourage fraudulent claims and not to caution against the making of unwise and ill-considered promises." (internal citation and quotations omitted)); 2 Hawkland, Uniform Commercial Code Series at § 2-201:06 n.2 (stating that a motion to dismiss is improper unless the plaintiff is given a full opportunity to elicit an admission in pretrial discovery proceedings).

These cases (and the Hawkland treatise) are persuasive, and we believe that New Jersey and North Carolina would find them so. We therefore hold that the district court should have given

ALA an opportunity to elicit an admission from CCAIR before dismissing the lawsuit.  Because ALA was given no such opportunity, the dismissal of the lawsuit was premature and must be set aside.  We recognize that our construction of the statute essentially means that U.C.C. § 8-319 will rarely provide the means for a motion to dismiss.[0]  However, for the reasons we have stated, we believe that such a result is contemplated by the statute and is, in fact, reasonable.

We also do not think our holding will significantly increase the costs of litigation.  The purposes of § 8-319(d) will be served if the district court grants to the plaintiff enough time to engage in a limited program of discovery with a view to permitting the plaintiff a fair opportunity to procure an admission.  The court could then consider in fairly short order a motion for summary judgment.  What is important is that the plaintiff be given some chance to obtain an admission from the defendants.[0]

---

[0]We do not rule out the possibility that in some cases the pleadings would exclude the possibility of admission, but that is not the case here.

[0] We acknowledge that the language in section 8-319(d) might lead one to the conclusion that, under our approach, even summary judgment would not be appropriate (since theoretically a witness could admit at trial that there was a contract).  It should not. It is well accepted that a district court may grant summary judgment where there is a statute of frauds defense under Article 8.  See, e.g., Katz v. Abrams, 549 F. Supp. 668, 672 (E.D. Pa. 1982) (holding that where the defendant denies making a contract in depositions, plaintiff is not entitled to a trial on the issue otherwise barred by § 8-319); see also, 7 Hawkland, Uniform Commercial Code Series § 8-319:07 ("[I]n those cases where the defendant has already specifically denied the plaintiff's factual allegations as, for example, in his answer or in a deposition, a

The order of the district court granting the motion to dismiss will be vacated and the case remanded to the district court for further proceedings consistent with this opinion. The parties shall bear their own costs.

_____

court should feel free to determine that a trial would serve no purpose because of the unlikelihood of eliciting an admission.").

A motion for summary judgment is different in critical respects from a motion to dismiss for failure to state a claim. In addition to the fact that a plaintiff presumably has had an opportunity to obtain admissions during discovery, a motion for summary judgment is reviewed under a much more stringent standard than a motion to dismiss for failure to state a claim. Thus, where the papers filed as part of the summary judgment motion show that there is no issue of material fact concerning the existence of a contract, the contention that a trial should go forward because there might be an admission at trial would be merely speculative and as such insufficient to avoid summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986).