

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-10-2006

# Kulp v. Veruete

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3139

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Kulp v. Veruete" (2006). *2006 Decisions.* Paper 1603.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1603

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-3139

TIMOTHY D. KULP, Individually and as Administrator
of the Estate of Timothy M. Kulp, Deceased; CAROL L. KULP,

Appellants

v.

SONIA VERUETTE, Individually and as Lieutenant at Centre County Prison;
SHANNON QUICK, Individually and as counselor employed by Centre County Can
Help and agent of Centre County Prison and/or Centre County; LIEUTENANT SMITH,
Individually and as Lieutenant at Centre County Prison; TIMOTHY GALLU,
Individually and as Counselor at Centre County Prison; DAVID C. KNEPP, C.O.,
Individually and as Correctional Officer at Centre County Prison; C.O. MCCLELLAN,
Individually and as Correctional Officer at Centre County Prison; C.O. ANDREWS,
Individually and as Correctional Officer at Centre County Prison; C.O. SHEARER,
Individually and as Correctional Officer at Centre County Prison; C.O. GATES,
Individually and as Correctional Officer at Centre County Prison; C.O. STEFANKO,
Individually and as Correctional Officer at Centre County Prison;
JOHN DOES, No. 1-10

(Amended per Order dated 9/9/04)

Appeal from the United States District Court for the
Middle District of Pennsylvania
(D.C. Civil Action No. 03-cv-01474)
District Judge: Honorable Malcolm Muir

Submitted Under Third Circuit LAR 34.1(a)
January 9, 2006

OPINION OF THE COURT

DEBEVOISE, Senior District Judge

Appellants, Timothy D. Kulp[1] and Carol L. Kulp, are the parents of Timothy M.

Kulp, ("Kulp") who committed suicide while incarcerated at the Centre County Prison

(the "Prison") in Pennsylvania. The parents commenced an action in the District Court

against the appellees, employees of the Prison, pursuant to 42 U.S.C. § 1983 and state

law. They appeal from orders of the District Court dismissing their First Amended

Complaint (the "Complaint") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a

claim. We will reverse.

## I. **Background**

The Complaint named ten persons as defendants in their individual and official

capacities. Because the District Court granted the defendants' motion to dismiss under

Rule 12(b)(6), we take the factual background of this case from the Complaint and accept

all allegations contained therein as true. <u>ALA, Inc. v. CCAIR, Inc.</u>, 29 F.3d 855, 859 (3d

---

[*] Honorable Dickinson R. Debevoise, Senior District Court Judge for the District of New
Jersey, sitting by designation.

[1] Timothy D. Kulp appeals individually and as administrator of the estate of Timothy M.
Kulp.

Cir. 1994).

Lieutenants Sonia Veruette and Smith were responsible for implementing appropriate policies of the Prison, supervising its staff and pretrial detainees, and establishing suicide watch and appropriate observation of pretrial detainees. Shannon Quick and Timothy Gallu were counseling or healthcare employees at the Prison. Correctional Officers Knepp, McClellan, Andrews, Shearer, Gates and Stefanko had responsibility for executing appropriate policies and procedures at the Prison, supervising pretrial detainees and, among other duties, implementing suicide watch and appropriate observation and handling pretrial detainees requiring suicide watch.

On or about 2:20 a.m. on August 26, 2001, eighteen year old Kulp was committed to the Prison as a pretrial detainee on charges of burglary, criminal attempt at burglary, criminal trespass, misdemeanor indecent assault and summary harassment. The commitment documentation, consisting of a Police Criminal Complaint and Affidavit of Probable Cause, reflected that Kulp, while drunk and after smoking marijuana, entered, without the consent or knowledge of the occupants, the dormitory rooms of at least three sleeping Penn State female students, lay next to them, and indecently fondled them during the early morning hours of August 25.

During Kulp's commitment, Officer McClellan noted that he had alcohol addiction and mental illness, and that he was cooperative but upset. Officer Knepp conducted a suicide prevention screening at about 2:30 a.m. He knew or should have known of the commitment documentation and the Inmate Commitment Summary Report. Officer

3

Knepp noted on Kulp's Suicide Prevention Screening Questionnaire that Kulp was worried about his current situation, but, contrary to all the documentation previously referred to, incorrectly noted on the Questionnaire that Kulp did not have a psychiatric history or take psychiatric medication, that his alleged crime was not shocking in nature, and that Kulp did not show signs of depression or appear anxious, afraid, angry, embarrassed, or ashamed. Officer Knepp reported on the Questionnaire that he did not notify the Shift Commander or refer Kulp to Mental Health. As a result of the Questionnaire Kulp was assigned to an initial 48 hours administrative segregation under regular supervision.

Officer Knepp failed to complete the Questionnaire accurately and failed to notify the Shift Commander of Kulp's condition. He failed to refer Kulp to Mental Health and failed to take steps to obtain a mental health examination or further health treatment. He did not have Kulp placed on a suicide watch, and he did not have Kulp appropriately observed, nor did he remove from Kulp's possession items that could be used in a suicide attempt.

At about 7:52 a.m. on August 26, Quick, the counselor and healthcare employee, examined Kulp. She knew or should have known the contents of all the foregoing documentation. Kulp informed Quick that his motive for the charged crimes was that he wanted to wake up next to another person, implying loneliness, depression, and/or another vulnerable emotional or mental state.

Quick noted in her Consultation Record that Kulp: (a) was depressed, labile,

4

tearful, confused and anxious; (b) expressed problems with his family and suffered from alcohol and marijuana abuse; (c) had relationship issues and mood swings with impulsive behavior; (d) had been diagnosed with bipolar disorder but declined to take his medication; (e) was having passive suicidal thought in the form of believing that things could not get worse; and (f) was very anxious about his arrest and related his current situation to family and friends. Quick further noted that, although she did not believe Kulp appeared to pose a threat to himself at that time, he had the potential to decompensate rapidly. Quick recommended that Kulp see a counselor, be placed in a cell by the guards, and be under observation. She failed specifically to request that Kulp be placed on a suicide watch and failed to report his vulnerability so that it could be properly acted upon. She failed to have Kulp appropriately observed, and she did not have removed from Kulp's possession items that could be used in a suicide attempt.

Lieutenant Smith, who knew or should have known of all of the previously mentioned documentation, noted at about 7:52 a.m. on August 26, 2001, that Quick had reported that Kulp was not a threat to himself at that time, that Kulp should see a prison counselor the next day and that an eye should be kept on Kulp. Knowing of Kulp's vulnerability to suicide from the above documentation, Lieutenant Smith nevertheless failed to have Kulp placed on suicide watch, or to have Kulp appropriately observed. He failed to remove from Kulp's possession items which could be used in a suicide attempt.

Lt. Veruette had the responsibility of assigning Kulp's cell and observation status. She knew, or should have known, on the basis of the contents of the aforementioned

5

documentation, that Kulp had a particular vulnerability to suicide and should be kept under observation. She assigned Kulp to Cell No. THU1, failing to have Kulp placed on suicide watch or appropriately observed. She failed to have removed from Kulp's possession items that could be used in a suicide attempt.

Gallu, a prison counsel, examined Kulp at 3:30 p.m. on August 26. He knew or should have known of the previously mentioned documentation. He reported about his consultation after Kulp committed suicide, stating that "(a) Kulp was quiet and polite; (b) they discussed Kulp's family and mental health history; (c) Kulp informed Defendant Gallu of his bipolarism and refusal to take his medication; (d) Defendant Gallu told Kulp that he would like to refer him to the MH/MR Unit of Centre County so that he could be evaluated and possibly set up with a psychiatrist, urged Kulp to take his medication, and stated that now might be a good time to get help. Kulp agreed and said he would meet with a Mental Health Liaison. When asked if he were suicidal or had a history of suicide, Kulp replied in the negative." (Complaint, para. 32.)

Based upon his observations and the various reports, Gallu knew, or should have known, that Kulp had a particular vulnerability to suicide. Nevertheless, he failed to take appropriate action. Instead he wrote that Kulp gave no indication of a desire to harm himself and reported that information to a Deputy Warden of the prison.

Kulp received no further counseling or mental health examination or treatment. He was not placed in a suicide watch, nor were items which could be used in a suicide attempt taken from him.

6

On August 27, 2001, at about 10:30 p.m., Lieutenant Veruette and Officers McClellan, Andrews, Shearer, Gates and Stefanko were on duty at the prison. Officers McClellan, Andrews and Shearer conducted a routine watch tour of the prison housing areas and observed Kulp sitting on his bed. All of these officers knew, or reasonably should have known, that they were to keep Kulp under observation as a potential suicide risk but failed to do so. They also failed to remove from him items which he could use in committing suicide. At approximately 11:06 p.m., when he could not see Kulp from the main door of the THU housing area, McClellan entered the housing area and found Kulp hanging by a shoelace around his neck.

In addition to alleging these facts, the Complaint alleged generally that each prison employee acted with deliberate indifference to Kulp's vulnerability to suicide, and that their actions and inactions caused Kulp's death in violation of his right to life, liberty and property guaranteed by the Fourteenth Amendment to the United States Constitution.

## II. The District Court Proceedings

The Prison employees filed three motions to dismiss the original complaint. The District Court granted each of the motions without prejudice to the right of the parents to file an amended complaint. The parents filed their First Amended Complaint (the Complaint), which dropped a number of defendants but changed little else of substance. Thereupon Quick moved to dismiss the Complaint, and subsequently the other Prison employees did likewise. The District Court granted the motions, dismissing the federal claims with prejudice and dismissing the state law claims without prejudice to the

7

parents' right to pursue those claims in the State Court."[2]  This appeal followed.

### III.  Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We have plenary review over a district court's grant of a motion to dismiss for failure to state a claim and we review the District Court's decision *de novo*, applying the same legal standard as the trial court to the same record.  Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004); Omnipoint Commc'ns Enters., L.P. v. Newtown Twp., 219 F.3d 240, 242 (3d Cir. 2000).  A motion to dismiss pursuant to Federal Rule 12(b)(6) should be granted only if, "accepting as true the facts alleged and all reasonable inferences that can be drawn therefrom," there is no reasonable reading upon which the plaintiff may be entitled to relief.  Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (Colburn I).

### IV.  Discussion

The District Court fully recognized the limited circumstances in which a motion to dismiss a complaint can be granted and emphasized the heavy burden a plaintiff carries in a prison suicide case brought under 42 U.S.C. § 1983.  Colburn v. Upper Darby Township, 946 F.2d 1017 (3d Cir. 1991) (Colburn II).  The plaintiff in such a case "has the burden of establishing three elements: (1) the detainee had a 'particular vulnerability

---

[2]  The District Court dismissed the parents' Corrected First Amended Complaint on procedural and substantive grounds.  That pleading had been filed simply to correct an oversight in the drafting of the caption and liability allegations of the First Amended Complaint - the omission of Officer McClellan.  The District Court had in any event treated McClellan as a party to the proceedings and had previously dismissed the action against him.

8

to suicide' (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers 'acted with reckless indifference' to the detainee's particular vulnerability." Id. at 1023.

The District Court held that as to each prison official the Amended Complaint "suffers from the same defects as the original complaint. It contains boilerplate, conclusory language which we are not obliged to accept as true. The principal example of this conclusory language is that [the Defendants] 'knew or should have known that Kulp had a particular vulnerability to suicide and acted with deliberate indifference.'" (A. 62a, A. 72a).

Referring to the information each Prison employee is alleged to have received and to the action or inaction attributed to each of them, the Court concluded that those allegations were insufficient to permit the case to proceed:

> As we observed in prior orders, the requirement of a particular vulnerability to suicide requires that there be a strong likelihood of self-inflicted harm rather than a mere possibility. Nothing alleged in the amended complaint suggests a strong likelihood of suicide. Moreover, there are no allegations in the amended complaint from which it could be concluded that Defendants were deliberately indifferent. Indeed the factual allegations set forth in the amended complaint reveal efforts by Defendants to provide Kulp with care.

(A. 63a, A. 72A-73a).

Colburn II, upon which the District Court relied, was in a different procedural posture from the present case. It concerned the granting of a summary judgment after full

9

discovery had been taken.  The present case is akin to <u>Colburn</u> I.

In <u>Colburn</u> I, the original complaint alleged in general terms that defendants knew, or should have known, that the detainee in question was a suicide risk.  We observed that "[w]hile this allegation standing alone may not have met this court's standard for a modicum of factual specificity in civil rights complaints, plaintiff, in her memorandum in opposition to defendants' motion to dismiss in the district court, buttressed her complaint allegation with [a number of facts] which could be asserted in an amended complaint." <u>Colburn</u> I at 670.  The opinion listed the facts.

Like the complaint in <u>Colburn</u> I, as supplemented by the memorandum, the Amended Complaint in this case contains numerous facts which, when viewed in their totality and supplemented by information obtained in discovery, might support an inference of liability on the part of some or all of the Prison employees.  It is premature to decide at this stage of the proceeding the full extent of each person's knowledge and the entirety of his or her actions.  As we stated in <u>Colburn</u> I, "[p]laintiff is therefore entitled to a reasonable amount of discovery to help her make the necessary showing to prove her case." <u>Id.</u> at 670.

The District Court here held the parents to a higher standard of pleading than is required.  As we have stated:

> The Defendants likewise argue on appeal that Alston's complaint lacked sufficient factual support.  But a plaintiff need not plead facts.  To withstand a 12(b)(6) motion, a plaintiff need only make out a claim upon which relief can be granted.  If more facts are necessary to resolve or clarify the disputed issues, the parties may avail themselves of the civil discovery

10

mechanisms under the Federal Rules.

…

The need for discovery before testing a complaint for factual sufficiency is particularly acute for civil rights plaintiffs, who often face informational disadvantages.

…

Because Alston's complaint was dismissed before an opportunity for discovery, any expectation of factual sufficiency was premature. It is a first principle of federal civil procedure that litigants "are entitled to discovery before being put to their proof." Bennett v. Schmidt, 153 F.3d 516, 519 (7th Cir. 1998).

Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004).

In the present case, the parents' Complaint was dismissed before they had an opportunity for discovery, and "any expectation of factual sufficiency was premature." It was error to dismiss the Complaint at that stage of the proceeding.

## V. <u>Conclusion</u>

For the foregoing reasons, we will reverse the judgment of the District Court and remand the case for further proceedings consistent with this opinion.