

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-20-2006

# Chemtech Intl Inc v. Chem Injection Tech

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2296

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Chemtech Intl Inc v. Chem Injection Tech" (2006). *2006 Decisions.* Paper 1412.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1412

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

—————

NO. 05-2296

—————

CHEMTECH INTERNATIONAL, INC.,
Appellant

v.

CHEMICAL INJECTION TECHNOLOGIES, INC.

—————

On Appeal From the United States
District Court For the Eastern District of Pennsylvania
(D.C. Civil Action No. 05-cv-00140)
District Judge:  Hon. Robert F. Kelly

—————

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 8, 2006

BEFORE:  AMBRO and STAPLETON, Circuit Judges,
and STAGG,* District Judge

(Opinion Filed March 20, 2006)

—————

* Hon. Tom Stagg, Senior United States District Judge for the Western District of
Louisiana, sitting by designation.

OPINION OF THE COURT

STAPLETON, Circuit Judge:

In November 1996, Chemtech International, Inc., ("Chemtech") and Chemical Injection Technologies, Inc., ("CIT") entered into an agreement to distribute gas chlorination systems in Southeast Asia. In this agreement, CIT agreed "to appoint [Chemtech] as exclusive distributor to represent [CIT's] SUPERIOR Gas Chlorination Equipment in the following territory: Thailand, Malaysia, Singapore, Taiwan." App. at 21. The agreement required Chemtech to sell only CIT products and required CIT to "forward all sales leads, customer inquiries, and all resale inquiries to Chemtech" in that area, "not set up any other distributors or dealers in the territory," and "make every possible effort to avoid any 'encroachment' into this territory by other CIT distributors." *Id.* The agreement expired after one year, with a renewal provision:

> This agreement will be renewed at the end of the initial period [one year] providing that all terms and conditions have been met as stated in this agreement, and further providing that both parties are in accord as to projected unit sales goals.

*Id.* at 22.

Five years later, on March 26, 2002, CIT sent a letter to Chemtech in which it changed the status of the relationship:

> After an extensive review of your sales in your territory . . . it is with deep

regret that effective April 1, 2002, [Chemtech] will no longer have exclusive distributor status for the Municipal Water and Wastewater markets in your territory. As you know, [Chemtech]'s sales have been on a steady decline since 1998. Since we are in the business to sell chlorinators, we have no choice at this time but to make this change in your territory. Chemtech will continue to be a protected distributor for [CIT] in the glove market and its related industries and Chemtech will retain its existing discount.

March 2002 Letter, App. at 24.

Chemtech sued CIT in the U.S. District Court in the Eastern District of Pennsylvania. Chemtech's complaint alleged that it formed a contract with CIT in November 1996 and attached the agreement. Chemtech alleged that it received the letter on March 26, 2002 from CIT and attached the letter. The complaint also alleged:

On or about April 16, 2003, Plaintiff [Chemtech] learned that Defendant [CIT] had been dealing directly with the Subdistributors and with Plaintiff's Customers since on or about March 26, 2002.

On or about July 1, 2004, Defendant unilaterally, without cause, and in breach of the agreement, revoked Plaintiff's distributor status as to certain products.

On or about August 19, 2004, Defendant unilaterally, without cause, and in breach of the Agreement, revoked Plaintiff's distributor status, and the Agreement, altogether.

App. at 16. Chemtech asserted claims against CIT for breach of contract and tortious interference with Chemtech's existing and future customers. CIT moved for dismissal under Federal Rule of Civil Procedure 12(b)(6).

The District Court granted the motion. It found that Chemtech's breach of contract claim would turn on whether or not the contract was in fact renewed and, thus, binding

3

when CIT's alleged "breach" occurred. The Court found that if the conditions for renewal – that the terms of the contract were satisfied and that the parties agreed on projected sales goals – were not met, and thus, "if the Agreement was not renewed through March of 2002, then, simply put, there was no Agreement for CIT to breach." App. at 5. The Court found that Chemtech's complaint failed to allege that the renewal provision had been satisfied and thus "all that is illustrated by the Complaint is that the parties continued a relationship at will after the Agreement expired in November of 1997." *Id.* at 6. The District Court applied Pennsylvania's "gist of the action" doctrine to bar Chemtech's tortious interference claims. The Court issued an order dismissing all of Chemtech's claims against CIT.

The District Court had diversity jurisdiction under 28 U.S.C. § 1332 and we have appellate jurisdiction under 28 U.S.C. § 1291. Our review of a District Court's grant of a motion to dismiss under Rule 12(b)(6) is plenary. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). In reviewing a grant of a motion to dismiss "we are required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Id.* The motion to dismiss should be granted only "if it appears to a certainty that no relief could be granted under any set of facts which could be proved." *Id.* at 351. "However, a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." *Id.*

Chemtech argues on appeal that the District Court erred by (1) granting the motion

4

to dismiss its breach of contract claim, (2) granting the motion to dismiss its tortious interference claims, and (3) entering an order dismissing all claims prematurely, without allowing Chemtech an opportunity to amend its complaint. We agree with Chemtech only on the last point.

On its breach of contract claims, Chemtech does not dispute that it was required to show the existence of a contractual obligation to make out a claim for breach of contract. *See, e.g., Lackner v. Glosser*, 2006 WL 181506 (Pa. Super. 2006) ("To maintain a cause of action in breach of contract, a plaintiff must establish (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resulting damages."). Chemtech argues, however, that the complaint it filed should survive the review given at the Rule 12(b)(6) stage of litigation.

Chemtech takes issue with the District Court finding that it failed to allege that the agreement continued past the initial year. Chemtech points out that it used the phrases "in breach of the agreement" and "revoked . . . [Chemtech's] status" in its Complaint where it described CIT's conduct in 2004. Br. Appellant at 7. Chemtech rhetorically asks: "If there was no Agreement, what did CIT "breach" and "revoke"?" *Id.*

But the District Court did not need to credit the assertions that the defendant "breached" and "revoked" a contract; courts are not required to credit bald assertions and legal conclusions in the complaint. Stating that a contract was breached is stating a legal conclusion. Stating that a document was signed, that the document called for certain performance, and that performance did not occur are all factual allegations that would

5

underpin this legal conclusion. *Cf. DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) (upholding motion to dismiss despite plaintiff's having alleged that a "conspiracy" existed because "the price of entry, even to discovery, is for the plaintiff to allege a *factual* predicate concrete enough to warrant further proceedings . . . . Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition"). To adequately state a claim for breach of contract under Rule 12(b)(6), Chemtech had to do more than simply assert that CIT "breached" or "revoked" a contract.

Chemtech also argues that the District Court should have drawn the inference that the contract was renewed from the implicit allegation in the complaint that the two parties continued to conduct business after 1997. The District Court did infer that the two parties continued to do business from 1997 to March 26, 2002. It did not, however, infer that CIT did business with Chemtech because it was legally obligated to do so.

The District Court was correct and did not err by failing to draw all reasonable inferences in the plaintiff's favor. To state a valid claim for breach of conduct based on the conduct alleged in this complaint, Chemtech had to allege facts by which the District Court could reasonably infer that CIT was obligated to deal with Chemtech exclusively on March 26, 2002, or obligated to deal with it in some capacity in July and August of 2004. To do so, the District Court had to be able to infer either (1) that the two express conditions of the renewal provision were met each year from 1996 through 2001, (2) that the parties had agreed to be bound indefinitely, or (3) that the parties' conduct evinced an

6

intent to be bound to each other with periodic reassessments and that March 26, 2002, was not one of those periodic reassessments. None of those inferences can be reasonably drawn from the facts included in this complaint. It is reasonable to infer from Chemtech's complaint that Chemtech and CIT executed a written contract from 1996-1997, that they conducted business with each other – apparently exclusively – from 1997 to 2002, and that in 2002 and 2004 CIT took action inconsistent with the 1996-1997 agreement. Chemtech's complaint did not reveal how it planned to show that CIT was under a contractual obligation at the time of the "breaching" conduct. While a plaintiff may rely on the court to draw all reasonable inferences in his favor at the Rule 12(b)(6) stage, a plaintiff who relies on the court to fill in the blanks for all of the information missing in his complaint does so at his peril.

Nor can we find fault with the District Court's dismissal of Chemtech's tortious interference claims. In Pennsylvania, "the gist of the action doctrine precludes a party from raising tort claims where the essence of the claim actually lies in a contract that governs the parties' relationship." *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 719 (Pa. Super. 2005). "The doctrine is designed to maintain the conceptional distinction between breach of contract claims and tort claims. . . . [and] preclude[s] plaintiffs from re-casting ordinary breach of contract claims into tort claims." *Id.* (quoting from *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002)). Courts differentiate tort

7

from contract claims, in part,[1] by the source of the duty imposed on the defendant: "Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." *Sullivan*, 873 A.2d at 719 (quoting *Bash v. Bell Tel. Co.*, 601 A.2d 825 (Pa. Super 1992)).

Chemtech's complaint describes the tortious conduct as CIT's "using the Subdistributors as direct distributors," "inducing the Subdistributors to not deal with" Chemtech, and "dealing directly with [Chemtech's] customers, all without regard to [Chemtech's] agreements with the Subdistributors and in breach of the Agreement." App. at 17-18. Reading the complaint, even in the light most favorable to Chemtech, reveals that Chemtech is alleging that CIT harmed it by conducting business with Chemtech's customers.[2] Chemtech correctly claims that it has a right to be free from – and CIT has a corresponding duty not to commit – certain kinds of interference in its business dealings. But Chemtech does not have a right to be free from competition and CIT has no duty "imposed by law as a matter of social policy" not to compete with Chemtech. Only a contract can confer such a right and impose such a duty – as it did for

---

[1] Conduct violating duties that are imposed by both social policies and agreements requires a more nuanced differentiation than is necessary for this case. *See eToll, Inc.*, 811 A.2d at 19.

[2] Arguably, "inducing the Subdistributors to not deal with" Chemtech could include conduct beyond mere economic competition – e.g. bribery, extortion, fraud . . . etc. But the Complaint does not allege facts from which we can reasonably infer that such conduct occurred.

8

these parties in the first year of their contract. Because the duty CIT is alleged to have violated is a duty not to compete, and the source of this duty could only be contractual, the District Court properly found that the conduct Chemtech alleged to be tortious was in fact alleged to be in violation of a contractual obligation.

While Chemtech accuses the District Court of inconsistency, there is nothing inconsistent or illogical about finding that a failed attempt to allege a breach of a duty in tort is actually a failed attempt to allege a breach of contractual duty. In a case where the duty in question was imposed by neither social policy nor contract, a plaintiff can fail to state both claims at once. In these circumstances, a failure to state a claim for breach of contract does not mean that a tort claim based on the same conduct cannot be barred by the "gist of the action" doctrine.

Chemtech makes two final arguments that the District Court's order dismissing its claims was premature. Chemtech cites *ALA Inc. v. CCAIR, Inc.*, 29 F.3d 855, 863 (3d Cir. 1994), for the argument that discovery would allow it to obtain an admission from CIT that the contract existed at the time when CIT "breached" it. Chemtech also argues that the District Court should have "afforded Chemtech the opportunity to amend its Complaint so as to make what is at least implicit therein, explicit." Br. Appellant at 10.

In *ALA Inc. v. CCAIR, Inc.*, 29 F.3d 855 (3d Cir. 1994), we agreed with a District Court's decision that a letter attached to a breach of contract complaint did not satisfy the statute of frauds's requirement of a writing for an enforceable sale of securities, but we found that granting a Rule 12(b)(6) motion to dismiss was premature nonetheless. *Id.* at

9

862-63. The statute in that case allowed for an oral contract for securities to be enforced if the party against whom enforcement was sought admitted to the existence of the contract. *Id.* at 861. The plaintiff argued that this statute conferred "the right to ask the defendant to admit the fact that an oral contract was made and, thus, precludes the granting of a 12(b)(6) motion . . . [where it would] deprive the plaintiff of any opportunity to get such an admission." *Id.* In those circumstances, we agreed that "[a] rule 12(b)(6) motion . . . would derail the plaintiff's case pre-pleading and allow the defendant to defeat a cause of action on an oral contract before the plaintiff has any opportunity to seek an admission that a contract existed." *Id.* at 862.

Chemtech does not argue that a statute precludes a Rule 12(b)(6) dismissal in this case. There was no statute of frauds or other writing requirement here, and Chemtech was free to allege facts that would describe how in 2002 and 2004, CIT incurred a contractual obligation to Chemtech outside of, and beyond the terms of, any written agreements. It failed to do so. *ALA* does not guarantee discovery for any contract plaintiff who is unable to plead the defendant's contractual obligation in something more than the conclusory statements in Chemtech's complaint.

Finally, Chemtech argues that it should have been afforded an opportunity to amend its complaint. We agree. The Federal Rules provide that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a). As a Rule 12(b)(6) motion is not a responsive pleading under Rule 15(a), Chemtech remained entitled to amend its complaint when the District

10

Court issued its opinion and order. We have confronted this issue before:

> The Federal Rules of Civil Procedure do not address the situation in which a deficiency in a complaint could be cured by amendment but leave to amend is not sought. Circuit case law, however, holds that leave to amend must be given in this situation as well.

*Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). We first described the manner in which district courts should proceed in this circumstance in *Borelli v. City of Reading*, 532 F.2d 950, 951 (3d Cir. 1976):

> [W]e suggest that district judges expressly state, where appropriate, that the plaintiff has leave to amend within a specified period of time, and that application for dismissal of the action may be made if a timely amendment is not forthcoming within that time. If the plaintiff does not desire to amend, he may file an appropriate notice with the district court asserting his intent to stand on the complaint, at which time an order to dismiss the action would be appropriate.

*Id.* at 951. In subsequent cases, we required this procedure for granting motions to dismiss. *See Darr v. Wolfe*, 767 F.2d 79 (3d Cir. 1985); *District Council 47 v. Bradley*, 795 F.2d 310 (3d Cir. 1986). Contrary to the waiver arguments advanced by CIT, our precedent expressly considers the fact that an argument of this sort may be made after a plaintiff has failed to raise the issue or request leave to amend the complaint before the District Court. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) ("Indeed, we have never required plaintiffs to request leave to amend in this context.") (quoting from *District Council 47*, 795 F.2d at 316.).[3]

---

[3] Indeed, a dissent in one of our cases makes clear that the arguments made by CIT have heretofore been considered and rejected by our Court. *See District Council 47*, 795 F.2d at 321-22 (Aldisert, C.J., dissenting).

11

Thus, in this circuit, "[w]hen a plaintiff does *not* seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." *Grayson*, 293 F.3d at 108. "[T]he District Court should not . . . dismiss[] the plaintiffs' claims" in this posture "without either granting leave to amend or concluding that any amendment would be futile." *Shane*, 213 F.3d at 116. Here, neither the docket nor the dismissal order indicate that the District Court allowed any time after it issued that order for Chemtech to amend its complaint. Nor did the District Court provide any indication that it had determined an amendment would be inequitable or futile. It follows that the District Court erred by denying Chemtech its opportunity to amend its complaint in accordance with Rule 15(a).

If Chemtech is only seeking to "make what is at least implicit . . . explicit" in its complaint, *see* Br. Appellant at 10, the District Court may still, consistent with this opinion, reach the same conclusions regarding the adequacy of the amended complaint. The Federal Rules only guarantee Chemtech one amendment "as a matter of course . . . before a responsive pleading." *See* Fed. R. Civ. P. 15(a). Thus, if Chemtech fails to state a claim in its amended complaint, the District Court would be under no obligation to offer it a second time-limited opportunity to amend in its order.

While we agree with the District Court's opinion, we will vacate its judgment and instruct it to reissue its dismissal order with a time-limited opportunity for Chemtech to amend its complaint in accordance with the procedure outlined in *Borelli* and subsequent

cases.